BERLIEN, *Appellant*, v. BIELER *et al.*

1. **Tax Suit:** LIFE ESTATE. A suit for taxes against the unknown heirs of a deceased person will not divest the life estate of the widow under the will.

2. **Equity:** ACCOUNTING : RIGHT TO REDEEM : ESTOPPEL. Where the creditor of one occupying land under a contract of purchase, agreed to buy it at a sale for taxes and to convey to the debtor on payment of the debt, and the debtor thereupon refrained from bidding, and the creditor having purchased, thereafter quit-claimed "his right" to another who had notice of the agreement, the debtor, on offering to perform his part of the agreement, is entitled to an accounting and a decree giving him the right to redeem, and is not estopped by having accepted a lease from the creditor's vendee, he being ignorant of his rights and unable to read, and having been required to act hastily and without disinterested advice.

3. ———— : ———— : MORTGAGEE IN POSSESSION. The creditor's vendee is to be regarded as a mortgagee in possession and is to be held accountable for rents and profits, but credited with taxes paid.

4. ———— : ———— : PARTIES. The creditor is a necessary party to a complete accounting.

*Appeal from Franklin Circuit Court.*—HON. A. J. SEAY, Judge.

REVERSED AND REMANDED.

*J. W. Booth, Bolte* and *Maupin* for appellant.˙

(1) Helm having bought at the tax sale, under a contract with plaintiff, whereby he undertook to protect plaintiff's interests in the land by buying it in, and holding the title that should pass to him as security for the purchase money, and as security for the money plaintiff then owed him, took the title that passed by the sheriff's deed, in trust for plaintiff. And Helm, by said conveyance, acquired no other beneficial interest

than a right to hold the purchase as security for the payment of the moneys which plaintiff contracted to pay him. *Jamison v. Glasscock*, 29 Mo. 191 ; *Grumley v. Webb*, 44 Mo. 444; *Kinard v. Heirs*, 3 Rich. Eq. 423 ; *Loyd v. Currin*, 3 Hump. 462 ; Story's Eq. Jur. [10 Ed.] secs. 1261, 1265. (2) Bieler purchased of Helm with notice of the facts as to the agreement between Helm and plaintiff, and holds the property subject to plaintiff's right to redeem. Story's Eq. Jur. [10 Ed.] secs. 395 and 400*b*.

*T. A. Lowe* for respondents.

On the equity branch of the case the finding and judgment of the court is supported by a preponderance of the evidence, and in all such cases, even where there is conflicting evidence, the appellate court will not disturb the finding of the trial court who is the best judge of the credibility of witnesses. *Judy v. Bank*, 81 Mo. 404 ; *Erskine v. Lowenstein*, 82 Mo. 301 ; *Dryden v. Bank*, 15 Mo. App. 580.

SHERWOOD, J.—William Helm owned the tract of land in controversy. He lived in Michigan, and died there in 1874, leaving a will, by which he devised the property to his wife Sophie, during her life or widowhood, with remainder to their children. In 1876, Berlien, the plaintiff, who owned a house and lot in Detroit, worth some two thousand dollars, exchanged the same with her for the Franklin county land, executed the contract on his part, placed her in possession, but obtained no deed in return, only a letter dated March 26, 1876, from her to one Schmidt, her agent in Franklin county, informing him that Berlien had bought her farm, and requesting him to give him the tax receipts, and *make him the deed*. Schmidt drew the deed, one of general warranty, and it is dated June 15, 1876, but not acknowledged until December 2, 1880, nor filed for

record till August 28, 1883, which was two or three days after Berlien received it from Schmidt. He went several times to Schmidt for this deed, but the latter refused to have it executed to him. It will be observed that Sophie Helm had no fee in the land, but only a life estate at best. The heirs of Helm also made Berlien a deed, dated July 5, 1883, and recorded on the same day as that of their mother

By virtue of this letter, Berlien obtained possession of the land which was then grown up in brush, cleared, moved on and cultivated it, and was there in March, 1880, when proceedings were instituted against the "unknown heirs of William Helm" for the payment of the taxes on the land, the result of which was that judgment was obtained and the land sold for taxes in November, 1880, and Frederick Helm, the brother of the deceased, became the purchaser, through William, at the price of sixty-six dollars, the land at that time being worth from fifteen hundred to two thousand dollars. Berlien at the time owed Frederick Helm one hundred and thirty-one dollars, for money paid by the latter as security for the former, for a pair of horses, presumably to work the land. Berlien was poor, ignorant and evidently of a feeble mind as already indicated. He had a large family of helpless children ; had no money to pay taxes with, and was evidently struggling, so far as in him lay, to keep the wolf from the door. About a week before the sale, he heard that it was to come off, by seeing the advertisement in a newspaper.

His situation appealed so strongly to his neighbor Rummelsmann, that the latter, though also poor, undertook to protect Berlien's interests, by buying in the land for him at the tax sale. For that purpose they went together to Union, where the sale was to occur. There they met Frederick Helm, who went there also for the purpose of buying in the land, in order to secure himself for the debt he had already paid for Berlien, and

for which he held his note. The parties met, and a conference took place between them, Rummelsmann representing the interests of his friend, and acting as spokesman about the business in hand. Rummelsmann relates the transaction as follows: "Then me and Helm made an agreement that we would get a man to buy the place back again, so that when Berlien settled the debts or gave him a mortgage on the place or the money, then Berlien should have the place back again. If he, Helm, was willing to do that, then I would not bid. Then Helm should buy it. Helm agreed to do that. So F. Wilhelmi bought it for Helm."

In this, as to the time of the agreement, he is fully corroborated by the testimony of Berlien, as well as by subsequent occurrences. Helm denies that Rummelsmann made any agreement with him to refrain from bidding if he would bid in the land and let Berlien have it back again ; and he denies that any mortgage was to be given, but he does admit this: "I said to Berlien and Rummelsmann that if Berlien would pay me that money back, he should have the place sure." Helm repeatedly recognized his agreement with Berlien after the sale took place, at which Wilhelmi bought in the land for him ; but in the spring following the sale, when he obtained the deed from the sheriff, he sold his "right in the land" to Bieler, the defendant, for four hundred dollars, giving him a quit-claim deed. Before he sold to Bieler, he states he informed him of his agreement to let Berlien have the land back on the payment of the money, and of his "talk" to that effect at the time he bought the land at tax-sale.

Much has been said on both sides about the validity or the invalidity of that sale. In the view taken of the matter, it is unnecessary to discuss it further than to say that, even if valid, there was nothing accomplished by it, so far as the life estate of Mrs. Helm is concerned, since the suit for taxes was against the " *unknown heirs*

*of William Helm,"* and she was not one of those heirs. The decree of the circuit court was therefore erroneous on this point, if on no other, in that it declared Berlien's deeds aforesaid null and void, and divesting him of all "right, title, interest and estate of, in and to said land or any part thereof."

But the decree was erroneous on other grounds, conceding the validity of the whole tax proceeding, and for these reasons: Reading the testimony of Helm carefully over, and comparing it narrowly with that of Rummelsmann and Berlien, I am persuaded that the version given by Rummelsmann of the agreement, sustained as he is by Berlien, is the true one, and ought to be made the foundation for equitable relief, so far as that testimony goes. And as to Bieler, according to his own showing, there were such facts thrust upon his observation during his conversation with Helm, while negotiating with him for "his right" in the land, as demanded investigation and compelled inquiry into the *status* which Berlien occupied towards the land, and his equities therein; and if he failed to use the clue thus furnished him, he was guilty of gross negligence, and this, in equity, is tantamount to notice. *Leavitt' v. LaForce*, 71 Mo. 353. Thus situated, he bought the land; he obtained the apparent legal title of the unknown heirs; but he bought it incumbered with the burden of Berlien's equities, a burden which a court of equity will not allow him in anywise to cast off.

It has been urged that Berlien has precluded himself, in any event, of equitable relief, by voluntarily accepting a lease for two years from Bieler, after the latter had informed him of his purchase, and notified him that he must pay rent. That lease was not voluntary; it was signed by Berlien, who could not read a word of English, who called the lease a "*petition*," and who at that time was unaware of his rights; evidently supposed that every vestige of his title was gone by

reason of the tax proceedings, and besides he was called upon to act hastily; without independent advice, or indeed any advice at all, except from a quarter from which disinterested advice would not be likely to come. In such circumstances, Berlien's act must be regarded as not the result of his untrammeled will, but as the result of *"moral duress."*

Inasmuch as Berlien has shown by his petition a willingness to stand by his agreement made with Helm, and inasmuch as Bieler has bought Helm's "right" to the land, becoming thereby the equitable assignee of Helm, and therefore standing in his shoes, Berlien is entitled to the relief he seeks, and it will be granted him, but upon these terms: In order to a complete and final adjudication of the whole matter, Helm must be made a party defendant. When this is done, an accounting will be had between Berlien and Bieler, regarding the former as the debtor of the latter, to the same extent and for the same amounts as if Helm were the only defendant and Berlien were seeking to enforce said agreement against him. Bieler is also to be treated in all respects as a mortgagee in possession, and held accountable for rents and profits, but credited by taxes paid, etc. Having taken an account as aforesaid, and struck a balance between Berlien and Bieler in the manner aforesaid, the lower court will enter a decree divesting whatever title, or apparent title, Bieler may have in the land and vesting the same in Berlien, and putting him in possession of his land again. If it be found, upon taking an account and striking a balance, that Berlien is indebted to Bieler, the lower court, in entering its decree, will declare the amount due, and that the same is a lien upon the land, giving a reasonable time, as in case of redemption from mortgages, in which to pay said sum, and in the event said debt be not paid at the day fixed, that then said land, or a sufficient portion thereof, shall be sold for the satisfaction of said

debt, and after satisfying the same, the residue shall be paid to said Berlien.

To that end, the judgment will be reversed and the cause remanded, with directions to proceed in conformity to this opinion. RAY, J., absent ; the other judges concur.