BENN et al. v. PRITCHETT et al., Appellants.

**Division One, June 12, 1901.**

1. **Conveyance: MISTAKE: MUST BE MUTUAL.** The suit is to set aside a deed which contained 124 acres of land which the petition charges it was not the grantor's intention to convey, but says nothing about the intention of the grantees. The decree of the court was that the mistake was mutual. *Held,* first, that the petition did not state facts sufficient to constitute a cause of action; second, the mistake of one party to a deed will not entitle him to relief unless the other party induced him to act under such mistake; third, the mistake of the scrivener who drew the deed will not constitute a mutual mistake as a ground for the reformation of the deed, unless he acted for both parties, and as the evidence shows that in this case he acted for the grantor alone, his mistake can not be charged to the grantees. There being no evidence of mutual mistake, the deed can not be set aside as being contrary to the intention of the parties.

2. ————: NOTICE OF EXISTING EQUITY. The giving and receiving of a note, ostensibly as a part of the consideration for a deed, but in fact to be used in paying the cost of any litigation which might arise over a certain prior deed, is evidence of notice to grantee of such deed of any fraud attendant upon the execution of the prior deed.

3. ————: ————: APPELLATE PRACTICE. Where the parol evidence unquestionably establishes the conclusion that a certain deed was obtained by threats of harm to persons just recovering from extended sickness, or other fraud or overreaching or coercion, and that a subsequent purchaser had notice of the manner in which the deed

was procured, this court will set aside the decree of the chancellor holding that the subsequent grantee was an innocent purchaser, for value, without notice.

4. ———: ———: RECORDED DEEDS. Where a subsequent purchaser has actual notice of the fraud which induced the execution of a deed, the fact that such deed was recorded at the time he purchased, is immaterial. He stands exactly in the shoes of the grantee whose fraud resulted in the conveyance.

5. ———: ———: FRAUD AND COERCION. A deed was made to one of the defendants and the heirs of her body. She then had two children living, a son and daughter, and they and her husband joined her in selling the land and invested the proceeds in another tract of 210 acres, the deed being made to her, and then she and her husband conveyed 124 acres of the tract to their daughter, whose husband, after her death and that of her brother (the other remainderman), came to the house of her parents and took the watch of his deceased wife and stated he would not give it back unless he was given a deed to the 124 acres owned by her at her death. At that time the mother-in-law was barely able to move around the house after a long spell of typhoid fever, and her husband was still confined to his bed with an attack of the same disease that had raged for nearly three months (ever since the death of the daughter) and he was unable to raise his head from the pillow or sign his name. When they refused to make such a deed he told them that unless they did he would make it "hotter than hell" for them, she thereby understanding him to mean that he would come in the night and burn the house. Without further talking the matter over with them, or explaining to them that he claimed any interest in the 78 acres as the heir of his wife, who had died without issue, or in anywise agreeing with them, he went to a justice of the peace and had him draw up a deed from them to himself of the 124 acres, and another deed from himself to them of his interest in the 78 and also the 124 acres, and on repeating his threats they (the defendants) signed the one from them to him, and then he conveyed the land to plaintiffs and both deeds were recorded, and afterwards, the defendants (the grantees in the other deed) had their deed recorded, and plaintiffs, who had notice of the whole transaction, bring this suit to reform the deed to the defendants on the ground that it, by mistake of the scrivener, wrongfully conveyed the 124 acres to them. *Held*, that on the principle that a

Vol 163 mo—36

deed must be the result of the untrammelled will of the parties, both these deeds were obtained by threats amounting to coercion and "moral duress," and both must be set aside, and the fraud was so flagrant that laches can not be imputed to the defendants for not recording their deed sooner. *Held*, also, that the plaintiffs, as the assignee of the son-in-law, will be subrogated to his interest in the 124 acres, although they were not innocent purchasers.

Appeal from Pike Circuit Court.—*Hon. Reuben F. Roy,* Judge.

REVERSED AND REMANDED *(with directions).*

*Pearson & Pearson* for appellants.

(1) There was no contract between William H. Pritchett and Mary E. Pritchett and A. J. Geary for the conveyance of the land in controversy to A. J. Geary. No consideration ever passed from the said Geary to the said Pritchetts, for the making of said deed. The deed was therefore void, and conveyed no interest of the Pritchetts to the said Geary. Of this fact the respondents had due notice, and are not innocent purchasers. (2) In disregarding and overruling the finding of facts made by the jury in this case, the court committed grievous error. The great preponderance of the evidence unquestionably sustained the jury in their findings as to whether Geary procured the deed from Pritchett and his wife by threats amounting to coercion. (3) The plaintiffs are not entitled to any relief in this cause because their petition does not contain facts sufficient to justify the intervention of a court of equity. It is only when on the face of the record there is a cloud on the title that resort to equity may be had. Clark v. Ins. Co., 52 Mo. 276; Mason v. Block, 87 Mo. 345. (4) The defendants were entitled to, and should have been granted, the relief they asked for. If, as we think, the evidence shows and

a jury so found the facts to be, that Geary, for their interest in the land in controversy, obtained a deed from defendants by threats, which amounted to coercion, and that the plaintiffs or either of them had knowledge that such threats and coercion were used, at the time they purchased, then their purchase was in fraud of these defendants, and their deed should be set aside in so far as it affects the interest of these defendants.

*Hostetter & Jones* for respondents.

(1) Appellant's counsel persist in treating this case as though it were a question solely between the original parties to the quitclaim deeds, that is, between the defendants and Andrew J. Geary. They blandly ignore the fact that the rights of third parties have intervened, and flippantly and recklessly charge the four plaintiffs, all of whom are reputable, substantial citizens, and honorable business men, with fraud and with colluding with "Geary for the purpose of cheating these defendants out of the said property." No motive can be found why any of these defendants should embark in any such fraudulent design against the defendants. Setting up no higher motive for human action than self-interest, it can not be shown that they either profited or expected to profit at defendants' expense. They, of course, bought the land as cheaply as possible, which was certainly very natural, but there is no evidence that the consideration was inadequate. (2) But even if this were a contest between the defendants and Geary, without the rights of third parties having intervened, we contend that the force or duress claimed would not amount to sufficient to avoid the deed. "It is generally held that no duress short of that which raises the apprehension of loss of life, limbs or personal liberty will be sufficient to avoid the deed." 5 Am. and Eng. Ency. of Law (1 Ed.), 430; Beach

on Contracts, 664; 6 Am. and Eng. Ency. of Law (1 Ed.), 70, 81; Dansch v. Crane, 109 Mo. 323; Campbell v. VanHouten, 44 Mo. App. 231; Cutler v. Zollinger, 117 Mo. 92; Schields v. Hickey, 26 Mo. App. 194. The authorities, as well as common sense, require that a party overreached or victimized into signing an instrument should act promptly and cause the same to be set aside in a reasonable time, at any rate. Davis v. Fox, 59 Mo. 125; 10 Amer. and Eng. Ency. Law (2 Ed.), 337.

MARSHALL, J.—This is a proceeding in equity to cancel a deed, dated December 16, 1895, from Andrew J. Geary to Mary E. and William H. Pritchett, to certain lands in Pike county, Missouri, recorded on December 21, 1897, in book 112 at page 501, of the record of deeds in said county.

The trial disclosed these facts: In 1880 Corben Benn conveyed, by warranty deed, 160 acres of land in township 55 to "Mary E. Pritchett and her bodily heirs." Mrs. Pritchett, is the daughter of said Corben Benn, is the wife of William H. Pritchett, and is one of the defendants in this action. She had then two children, Elizabeth A. and a son named Pate. The daughter, Elizabeth, married Andrew J. Geary. In 1881, Mrs. Pritchett sold the land, thus conveyed by her father, for $4,000, and her daughter and son joined her in the deed. In January, 1892, Mrs. Pritchett purchased a farm of about 210 acres near Ashburn, in Salt River township, Pike county, from Samuel L. McGee, and took the title in her own name. She paid $5,500 for it. She paid for it by using the $4,000 received from the sale of the land her father had deeded her, and by raising the $1,500 difference, by a deed of trust on 132 acres of the 210 acres so purchased from McGee. She and her husband then conveyed the 132 acres to their daughter, Elizabeth Geary, subject to the $1,500 deed of trust. Mrs.

Geary and her husband sold eight acres of the 132 acres so conveyed to Elizabeth, and the balance, 124 acres, was still owned by Elizabeth at the time of her death in October, 1895. The son, Pate, died in March, 1895. After the death of Elizabeth, her parents were both taken sick with typhoid fever and from October to December 16, 1895, were very ill. On December 16, 1895, Mrs. Pritchett was able to be up for awhile every day and could go around the house, but Mr. Pritchett was still confined to his bed and unable to sit up or write his name. Andrew Geary, the son-in-law, lived with his wife on the 124 acres, and continued to reside there after his wife's death. The deed of trust had been reduced to $1,104. After his wife's death and during the subsequent long and serious illness of his father and mother-in-law, he was frequently at their house. He says he nursed them through that illness, but his statement is not borne out by the evidence, which establishes the fact that Mrs. Pritchett had a hired girl to nurse her and Mr. Pritchett had a hired man to nurse him, and there was another hired man employed to look after the place. Geary did take his meals at their house, however, but spent most of his time in town. On the sixteenth of December, 1895, Geary took a watch, that had belonged to his wife, from his mother-in-law's room, and refused to return it unless she would make him a deed to her interest in the 124 acres so owned by his wife at the time of her death, and raised a disturbance around the house, and when Mr. and Mrs. Pritchett refused to make such a deed he told them that if they did not make the deed, he would make it "hotter than hell" for them. Finally, about dark that evening, Geary sent for a justice of the peace, and had him prepare two deeds, one from Mr. and Mrs. Pritchett to him for the 124 acres owned by his late wife, and one from him, Geary, to Mr. and Mrs. Pritchett for the same 124 acres and also for all, except about 20 acres, of the re-

maining part of the land purchased from McGee, on which the Pritchetts resided. Neither party put their deeds on record at once. Geary, however, sold the 124 acres to the plaintiffs herein by deed dated April 10, 1896, and on June 9, 1896, the deed from the Pritchetts to Geary, and the deed from Geary to the plaintiffs, were put on record. The Pritchetts did not record Geary's deed to them until December 21, 1897. But, notwithstanding the denials of the plaintiffs of any knowledge or notice of that deed, there is no room for doubt, upon the testimony preserved by this record, that they not only knew of the deed from Geary to the Pritchetts, but were also personally notified that the Pritchetts claimed that their deed to Geary had been procured by fraud and duress, and that they were further notified and warned that if they bought the land form Geary they would buy a lawsuit. Aside from this direct testimony, the terms of sale clearly establish the charge that the plaintiffs purchased with notice. Those terms were $2,500, to pay which the plaintiffs assumed the deed of trust on the land, on which $1,104 was still due; paid Geary $396 in cash; and gave him their unsecured note for $1,000 for the balance of the purchase price, payable at two years, and Geary hypothecated that note with the Frankfort Exchange Bank as collateral security for his note for $350, and it was so held at the time of the trial of this case in the circuit court in March, 1898. There is some testimony to the effect that the $1,000 represented by the two-year note, was to be used in carrying on any litigation that might ensue. There is also some testimony that the plaintiffs have paid Geary $200 on account of the $1,000, but it also appears that the plaintiffs are men of means and no reason is given for not having paid the whole amount of the note at maturity, and none can be conjectured, unless the money was to be employed in defending the title.

It also appears that Geary was advised by counsel that

his wife and her brother had an interest in the land that had been deeded by Corben Benn to Mary E. Pritchett and her bodily heirs, and hence had an interest in the McGee land which Mrs. Pritchett had purchased with the proceeds of- the sale of that land, and that Mrs. Geary had also a further interest in the McGee land in right of her heirship of her brother, Pate, and that upon the death of his wife, without issue, he, as husband, became, under the Act of 1895, entitled to one-half of her said interest, both in the 124 acres deeded to her by her parents, and in her share in the 78 acres upon which the Pritchetts resided, as an heir of her deceased brother. And further, that the best way to settle the matter was for him, Geary, to quitclaim to the Pritchetts his interest in the 78 acres, and have them quitclaim to him their interest in the 124 acres. It is claimed that he was simply following out this advice when he procured the execution of the deeds of December 16, 1895, and that the justice of the peace, who drew those deeds, made a mistake in the deed Geary made to the Pritchetts by including therein the 124 acres, being the same property conveyed by the Pritchetts to Geary at that time, and that his intention was that his deed should only convey to the Pritchetts his interest in the 78 acres.

It also appears that although Geary was so advised and so intended and the deeds were so drawn, Geary did not communicate any such purpose, intention or plan to Mr. and Mrs. Pritchett, and that as to Mr. Pritchett he had no talk with him whatever before the execution of the deeds except to tell him he would "make it hotter than hell" for him if he did not sign the deed, and as to Mrs. Pritchett, he said the same thing, with the addition that he would never give her back her deceased daughter's watch unless she made the deed that day, and that she thought the threat that he would make it "hotter than hell" for her, meant he would burn their house that night while they

lay sick and almost helpless in it. The circumstances attending the execution of these deeds and the Pritchetts' claim as to the fraud were common neighborhood talk before plaintiffs bought, and plaintiffs lived in that neighborhood.

The plaintiffs went into possession of the 124 acres immediately after they purchased the property, and have been in possession ever since. They claim they did not know of the alleged mistake in the deed from Geary to the Pritchetts until shortly before this action was begun, returnable to the February term, 1898, of the Pike Circuit Court, when they sold twenty-five acres of the land and were trying to run the line between the 124 acres and the 78 acres, and as soon as they discovered such alleged mistake they brought this suit, seeking to have the deed from Geary to the Pritchetts cancelled as a cloud on their title.

The petition avers that the deed from Geary to the Pritchetts was for the same land—the 124 acres—as that described in the deed from the Pritchetts to Geary, but the deed from Geary to the Pritchetts discloses that it covered not only the 124 acres but also all of the 78 acres, except about 20 acres.

The only ground upon which the petition asks to have the Geary deed cancelled is this: "Plaintiffs say that it was not the intention of said Andrew J. Geary to convey back to said William H. and Mary E. Pritchett the real estate described in said deed, but it was his intention to convey his interest in other real estate and such intention was known by the said grantee in said deed." It will be observed that the intention of the Pritchetts is not referred to or taken into account, nor is there any averment that the mistake was the mutual mistake of the Prichetts and of Geary. The plaintiffs allege that they purchased in good faith and for full value, and that the Pritchetts are estopped from claiming title under their deed because they did not put their deed on record until after the plaintiffs

purchased, and they ask a cancellation of that deed, and a decree vesting the title in the plaintiffs.

The answer pleads that the deed from the Pritchetts to Geary was procured by force, coercion and intimidation and without consideration, while they were sick and in a helpless and enfeebled condition; that they notified the plaintiffs of their claim in this regard before they bought from Geary, and by way of cross-action they ask that their deed to Geary to the 124 acres be cancelled.

The court called to its aid a jury and submitted to the jury the following issues:

"First.  Was the deed from Pritchett and wife to Geary procured by Geary by threats amounting to coercion to such an extent as to deprive Pritchett of his free will in regard to such transaction?

"Second.  At the time of the sale from Geary to plaintiffs, did plaintiffs or either of them have knowledge of the existence of the deed from Geary to Pritchett?"

"If the jury find that threats and coercion were used by the said Geary as explained in question number one; then the jury will answer this question:

"Third.  Did plaintiffs or either of them at the time they purchased, have knowledge that such threats and coercion were used?

"The jury are instructed that the burden of proving, by the greater weight of the evidence the affirmative of each of the questions submitted to the jury, rests upon the defendant."

Under the instructions of the court the jury found a verdict as follows:

"We, the jury, answer the questions submitted to us as follows:

"Answer to first question, Yes.

"Answer to second question, Yes.

"Answer to third question, Yes."

The court, however, ignored the finding of the jury and entered a judgment against the defendants on their cross-bill, and made a special finding of facts in favor of the plaintiffs to the effect that Geary did not intend to convey the 124 acres to the Pritchetts, but did intend to convey his interest in other lands to them, and that the Pritchetts did not intend that Geary should convey the 124 acres to them but did intend that he should convey to them his interest in other lands, and hence the deed from Geary to the Pritchetts "was the result of mistake and in equity and good conscience ought not to have any force or validity as against these plaintiffs;" and that the plaintiffs were innocent purchasers, for value and without notice, for full consideration, and that defendants are estopped from asserting title under the Geary deed to them, and thereupon entered a decree cancelling the Geary deed, and divesting title out of the defendants, but did not expressly vest it in any one.

From the decree the defendants appealed.

## I.

In any view that can be taken of this case the judgment of the circuit court is erroneous and must be reversed.

If it be true that the scrivener made a mistake in including the 124 acres in the deed from Geary to the Pritchetts, and that Geary alone intended, as the petition charges, or both Geary and the Pritchetts intended, as the court finds, that Geary should convey only his interest in the 78 acres, the decree can not stand, because it sets aside the Geary deed entirely, as to both the 124 acres and the 78 acres, when concededly, and according to the plaintiffs' contention, it was Geary's intention to convey to the Pritchetts his interest in the 78 acres.

So that the deed carries out even Geary's intention as to the 78 acres.. If the entire deed is set aside, the result will be that the plaintiffs, as Geary's grantee, will have the whole title to the 124 acres—Geary's half and the Pritchetts' half, too— while the Pritchetts will not have any right to Geary's interest in the 78 acres. This result would be utterly at variance with the scheme of exchange which plaintiffs and Geary contend was the purpose in view when the deeds were made and would take away the only consideration upon which they claim the deed from the Pritchetts to Geary rests, and would be a fraud upon the Pritchetts.

This error arose from the fact that the petition charges that the Pritchetts' deed to Geary related only to.the 124 acres, whereas, the deed embraced not only the 124 acres, but also 58 of the 78 acres on which the Pritchetts lived. In consequence of the misdescription in the petition, the court fell into the error of cancelling the whole deed and divesting title out of the Pritchetts as to both tracts of land.

But a correction of this error would not do complete justice between the parties.

## II.

The petition charges simply a mistake of Geary in making the deed to the Pritchetts. The decree finds that there was a mutual mistake of both parties, notwithstanding no mutual mistake was alleged in the petition. The petition did not state facts sufficient to constitute a cause of action. The decree supplied the substantial fact whose omission made the petition insufficient. Equity will only relieve against mutual mistakes. The mistake of one party to a contract will not entitle him to relief, unless the other party induced him to act under such mistake, which is not this case. [Mathews v. Kan-

sas City, 80 Mo. 231; Cassidy v. Metcalf, 66 Mo. l. c. 531; Henderson v. Beasley, 137 Mo. 199; Steinberg v. Ins. Co., 49 Mo. App. 255; Bartlett v. Brown, 121 Mo. 353; Adkins v. Tomlinson, 121 Mo. 487; Koontz v. Bank, 51 Mo. 275.]

A mistake of a conveyancer will not constitute a mutual mistake as a ground for a reformation of the instrument, unless he acted for both parties. [Brocking v. Straat, 17 Mo. App. 296, l. c. 305.] The justice of the peace in this case acted for Geary alone. Mistake on one side, without fraud of some kind on the other side inducing the mistake, will not be sufficient to relieve the party making the mistake. [Norton v. Bohart, 105 Mo. 615.]

There is not a particle of evidence in this record to support the finding that there was a mutual mistake. On the part of the Pritchetts, the transaction was either exactly as they intended or else it was procured from them by fraud, and duress.

The judgment of the trial court must be reversed for this reason also.

## III.

Ordinarily this court will defer to the finding of fact, in equity cases, by the trial court, especially where the case was tried in that court upon oral testimony. But in this case we are compelled to agree with the finding of fact made by the jury, that the deed from the Pritchetts to Geary was procured by threats amounting to coercion to such an extent as to deprive them of their free will in the transaction, and that at the time of the sale by Geary to plaintiffs, they knew that the deed from the Pritchetts to Geary was procured by means of such threats, and also knew of the deed from Geary to the Pritchetts.

Not only were all the circumstances attending the execu-

tion of the deeds and of the Pritchetts' claim that the deed had been procured from them by fraud, matters of common knowledge in the neighborhood in which the plaintiffs as well as Geary and the Pritchetts lived, but the evidence is overwhelming that the plaintiffs were personally notified and warned thereof before they purchased, and the terms of the purchase, as well as their conduct in reference to the $1,000 note for the balance due of the purchase price, precludes any other conclusion than that the plaintiffs purchased with full knowledge of all the facts.

The plaintiffs are not therefore innocent purchasers, for value and without notice, but stand exactly in Geary's shoes, and if Geary would not be entitled to recover, if he was the plaintiff in this action, the plaintiffs can not do so. For having actual notice, the fact that neither of the deeds had been recorded when they purchased is immaterial.

## IV.

As between Geary and the Pritchetts, the status of the matter is this: Upon the death of Mrs. Geary, without any child or descendant, her husband became entitled, under the Act of 1895 (Laws 1895, p. 169; R. S. 1899, sec. 2938), to one-half of the 124 acres, absolutely, and her father and mother —the Pritchetts—became entitled to the other half thereof in equal parts (R. S. 1899, sec. 2908), which would be equal to 62 acres to each party. Assuming that the $2,500, the price at which the plaintiff bought from Geary, is the true value of the land, the value of the Pritchetts' half would be $1,250 less one-half of the balance of $1,104 due on the deed of trust, equal to $552, which would make the net value of the Pritchetts' share $698 and the Geary half would be worth the same amount.

Assuming that Mrs. Pritchett had only a life estate in the 160 acres deeded to her and her bodily heirs by her father, Corben Benn, and that her children, Mrs. Geary and Pate Pritchett, owned the remainder in fee; and assuming that the investment by Mrs. Pritchett of the $4,000 received by her from the sale of this land in the McGee land, gave the mother and her children the same interest in the McGee land that they had in the 160 acres; and assuming that the conveyance of the 132 acres by Mrs. Pritchett to Mrs. Geary, subject to the $1,500 deed of trust, was intended to compensate her for her interest in the 160 acres; and assuming that Pate Pritchett had an interest in the 78 acres commensurate with his interest in the 160 acres, and that upon Pate's death, without issue, the 78 acres passed in equal parts (under R. S. 1899, sec. 2908), to his father, mother and sister, and that upon the sister's death, her one-third thereof passed one-half to her husband, Geary, and the other half to her father and mother, this would give Geary a right to one-sixth of the 78 acres—equal to thirteen acres; and assuming that the 78 acres were worth as much per acre as the 124 acres (that is about $20 an acre), this would make Geary's interest in the 78 acres worth $260.

Now, according to Geary's testimony it was his intention to deed to the Pritchetts his thirteen acres of the 78 acres, worth $260, and have them deed him their 62 acres of the 124 acres, worth $698 (after deducting the half of the balance due under the deed of trust). In other words, he intended to cheat the Pritchetts out of $438, the difference between the value of his 13 acres and the value of their 62 acres.

It is not even pretended that the matter had been talked over with, explained to or agreed to by the Pritchetts, nor that they were even informed that Geary set up any claim to any part of the 78 acres, nor does the petition assert any such right in Geary. But Geary simply says his counsel had advised him

that it was the easiest way to settle the matter, and he intended to do it. So, without ever saying to the Pritchetts by your leave, by your grace, or with your consent, he sent for a justice of the peace and had him prepare two deeds to carry out his intention, and then told the Pritchetts that the deed must be consummated that day or he would make it "hotter than hell" for them if they did not do so, and as to Mrs. Pritchett, this threat was supplemented with the threat that he would not give her back her deceased daughter's watch, which he had wrong-fully obtained possession of, unless she signed the deed. This, too, at a time when Mrs. Pritchett was barely able to move around the house after a long spell of sickness, and when Mr. Pritchett was still confined to his bed from an attack of typhoid fever that had raged for nearly three months, and he was una-ble to raise his head from the pillow or to sign his name, and when, within the year they had lost both of their children and became childless in their old age.

The effort to overreach and defraud the old people proved unavailing, however, and now a court of equity is asked to lend its aid, not only to effectuate the scheme, but to augment the wrong by cancelling the Geary deed to the Pritchetts, and thereby leave Geary and his grantees possessed of the Pritchetts' title to one-half of the 124 acres, and at the same time to restore to Geary his alleged interest in the 78 acres. It is not neces-sary to decide in this case whether Geary has any interest in the 78 acres. But unless he has, there is no possible consideration to support the deed from the Pritchetts to him of their half interest in the 124 acres.

No court that ever was constituted would seriously con-sider such an application. The deed from the Pritchetts to Geary was not the result of their "untrammeled will," but was hastily executed, without their previous agreement to do so, without disinterested advice, under circumstances that strongly

appeal to good conscience for relief, and must therefore be regarded not only as the result of "moral duress" (Berlien v. Bieler, 96 Mo. 496), but also as having been procured by Geary by threats amounting to coercion to such an extent as to deprive the Pritchetts of their free will in the transaction, and the jury was right in so finding. The transaction is unconscionable and indefensible.

Not only have the plaintiffs, standing in Geary's shoes, failed to show any ground for equitable aid to set aside the Geary deed to the Pritchetts, but they have supplemented the defendant's showing for equitable assistance in setting aside the deed from the Pritchetts to Geary to their interest in the 124 acres. However, as both deeds were parts of the same fraudulent transaction, it is only right that both deeds should be set aside, and all the parties restored to the position they occupied before he deeds were made. There is no merit in the contention that the Pritchetts have been guilty of such laches as precludes equitable aid. True, neither party recorded their deed until more than two months after the plaintiffs purchased, but as the plaintiff's had actual personal notice and warning, the failure to record the deeds is of no consequence. So neither party brought suit for over two years after the deeds were made, and, therefore, one is as much guilty of laches as the other. But the fraud and injustice in this case is so flagrant and gross that no doctrine of laches should prevent justice being done, especially as no innocent person will suffer thereby. When both deeds are cancelled it will leave the plaintiffs, as the assignees of Geary, subrogated to Geary's interest in the 124 acres, and Geary free to assert whatever right he may be able to establish to the one-sixth interest in the 78 acres, and will restore to the Pritchetts their one-half interest in the 124 acres. This will not injure the plaintiffs, for at the utmost they have only paid Geary $596 for his interest

in the 124 acres, which as shown herein, is worth $698, after deducting one-half of the $1,104 balance due under the deed of trust.

The judgment of the circuit court is reversed and the cause remanded to that court with directions to enter a decree cancelling the deed from the Pritchetts to Geary and also the deed from Geary to the Pritchetts dated December 16, 1895, and recorded in book 112 at page 337, and book 112 at page 501, respectively, of the records of deeds of Pike county, and that all the costs be adjudged against the plaintiffs.

All concur.