In the Matter of ESTATE of George Ralph WAHBY, George Ralph Wahby, Jr., Personal Representative, Appellant.

No. 70367.

Supreme Court of Missouri,
En Banc.

Oct. 18, 1988.

Michael P. David, St. Louis, for appellant.

Joseph Webb, St. Louis, for respondent.

BILLINGS, Chief Justice.

The Probate Division of the Circuit Court of the City of St. Louis ordered the Estate of Wahby distributed pursuant to the Missouri intestate succession law. Appellants contend the distribution is governed by an agreement between the parties. Affirmed.[1]

George Ralph Wahby died intestate on September 17, 1986, survived by his widow Sandra (respondent) and four adult children from an earlier marriage, appellants herein. During the week following the decedent's death, the appellants engaged in a wide variety of intimidating activities including: physically assaulting their stepmother, subjecting her to verbal abuse, breaking into her home, threatening the lives of her sister and brother-in-law in front of their small children, and attempting to institute criminal proceedings against their stepmother for the death of her husband—a charge later found to be without merit; further, appellants informed their stepmother that she would be "taken care of", not by appellants, but by "Joe Blow down the street" if she did not sign the document which is the subject of this lawsuit. Sandra Wahby testified that she understood this threat to mean that appellants would hire someone to kill her if she did not do what they told her to. At one point during this week Sandra Wahby contacted the local police in an attempt to stop appellants' illegal activities. She was informed by the police that since this was a family matter nothing would be gained by pressing charges. One of the appellants was then a law enforcement officer.

The evidence is clear and undisputed that Sandra was very distraught and upset during the week following the death of her husband. One of the appellants testified that Sandra Wahby was "a nervous wreck"

---

1. This case is before the Court by reason of the recusal of the members of the Missouri Court of Appeals, Eastern District, because one of the appellants is a former employee of that court.

and that she "kept flipping out" during this week. He further testified that she passed out on two occasions during the funeral.

The day after the funeral, Sandra Wahby consented to meet with appellants at their attorney's office to discuss the distribution of the decedent's property. The next day, two days after the funeral, appellants and Sandra Wahby signed the "agreement" which had been prepared by appellants' attorney. No one advised the widow as to her legal rights and she had not consulted an attorney.

The judgment of the probate court ordering distribution of the decedent's property consistently with the law of intestate succession will be affirmed unless it is either against the weight of the evidence, unsupported by substantial evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Ludwig v. Ludwig*, 693 S.W.2d 816, 819 (Mo.App.1985). A correct judgment will not be overturned even if it is based on a wrong or insufficient reason. *Edgar v. Fitzpatrick*, 377 S.W.2d 314, 318 (Mo. banc 1964); *Ludwig* at 819.

It has long been the rule in Missouri that a contract will not be enforced where there is coercion, duress, misrepresentation or fraud. *Estes v. Estes*, 166 S.W.2d 1061, 1064 (Mo.1942); *Cronacher v. Runge*, 98 S.W.2d 603, 605 (Mo.1936); *Benn v. Pritchett*, 163 Mo. 560, 63 S.W. 1103, 1107 (1901); *In Re Marriage of Harrison*, 734 S.W.2d 934, 941 (Mo.App.1987).

Coercion or duress will invalidate a contract where a party to the contract is prevented from exercising free will by the threats of another. *McCandlish v. Linker*, 231 S.W.2d 162, 164 (Mo.1950); *Benn* 63 S.W. at 1107; *Marriage of Harrison* at 941–42. Whether duress caused the execution of the contract must be determined by the facts of each particular case and all of the surrounding circumstances. *McCandlish* at 164. It is not the nature of the threat, but rather the effect of the threat on the mind which prevents free will and constitutes duress. *Benn* 63 S.W. at 1107; *Marriage of Harrison* at 942. "[W]here there is little or no consideration, equity

requires only the slightest circumstances of fraud, duress or mistake." *Perkins v. Rantz*, 631 S.W.2d 907, 911 (Mo.App.1982).

In the case before this Court, there does not appear to be significant consideration. While the record is not clear, the testimony of the parties indicates that some of the property included in the inventory of the estate property was property owned jointly by the decedent and Sandra, or by the entireties. Under intestate succession, such property is not properly part of the estate. *Matter of Estate of Parker*, 536 S.W.2d 25 (Mo. banc 1976); *Pelsue v. Pelsue*, 367 S.W.2d 487 (Mo.1963). However, under the "agreement" signed by Sandra Wahby and appellants, all property in which the decedent "had any lawful interest at the time of his death, however same may be titled, be divided equally among the five parties."

The inventory lists total assets in the estate of $114,251.76. Again, the record is not clear on how all the property was titled or acquired, but from the property determined to be subject to distribution in the estate, widow Sandra would be entitled to receive exempt property (§ 474.250, RSMo 1986), one year's support (§ 474.260, RSMo 1986), and inheritance as surviving spouse (§ 474.010, RSMo 1986). Under the "agreement" signed by the parties, Sandra would receive approximately $30,000 even though the record indicates that she may already own outright far more than that sum of the property listed in the inventory. The only ostensible consideration appellants offered Sandra Wahby in exchange was appellants' decision to forego a doubtful claim that she had wrongfully caused her husband's death.

*Benn v. Pritchett*, 163 Mo. 560, 63 S.W. 1103 (1901), is similar to this case in several respects. There the court held that duress was shown where a grantee threatened to make it "hotter than hell" for the grantors if they did not sign the deed. The grantors were in the process of recovering from typhoid fever and understood the threat to mean that their house would be set on fire while they were sleeping if they did not sign. Factors which are similar in both

*Benn* and the present case are: little or no consideration, only the coercing party had the benefit of counsel, there were threats perceived to be death threats, and the coerced party was in a weakened state.

Here, the acts and conduct of appellants go far beyond threats and include breaking and entering and assault. Sandra Wahby testified that she was afraid to go to her own home and that she signed the agreement because she was afraid of what the appellants would do to her if she did not sign. Sandra Wahby's independent will was overwhelmed by appellants' threats and actions, and consequently, the "agreement" between Sandra Wahby and appellants is unenforceable because it was obtained by coercion.

The judgment ordering the distribution of George Ralph Wahby's estate consistently with the law of intestate succession is affirmed.

All concur.