# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

---

No. 00-6009EM

---

| | |
|---|---|
| In re: Leo Joseph Callier | * |
| | * |
| Debtor | * |
| | * |
| Donna Callier | * |
| | * Appeal from the United States |
| Plaintiff/Appellee | * Bankruptcy Court for the Eastern |
| | * District of Missouri |
| v. | * |
| | * |
| Leo Joseph Callier | * |
| | * |
| Defendant/Appellee | * |
| | * |
| Charles H. Gray | * |
| | * |
| Defendant/Appellant | * |

---

Submitted: July 6, 2000
Filed: August 17, 2000

---

Before KRESSEL, SCOTT and O'BRIEN[1], Bankruptcy Judges

---

O'BRIEN, Bankruptcy Judge

---

[1]Dennis D. O'Brien, Chief Judge, United States Bankruptcy Court for the District of Minnesota, sitting by designation.

Defendant Charles H. Gray appeals from a bankruptcy court judgment reforming a deed to certain real property, which originally named Defendant Debtor Leo Joseph Callier as sole grantee, to reflect Plaintiff Donna Callier and Defendant Leo Joseph Callier owners as joint tenants by the entirety. For the following reasons, we reverse the bankruptcy court's judgment.

I

Charles H. Gray obtained a judgment in state court against Debtor Leo Joseph Callier in the amount of $1.3 million on May 15, 1997. On August 8 1997, Mr. Callier filed bankruptcy under Chapter 11. In his bankruptcy schedules, Mr. Callier listed property, which is the subject of these proceedings, known as the Crawford County Farm. He identified his wife (Plaintiff Donna Callier), along with his son and daughter-in-law, as potentially claiming an interest in the property.

The Crawford County Farm was acquired in Leo Callier's name alone in 1990 or 1991, in a transaction that involved an exchange of another property known as the Christian County property. Sometime prior to acquisition of the Crawford County Farm property, Mr. Callier made a loan to an unidentified friend, and took title to the Christian County property from the friend as security for repayment of the loan. Mr. Callier held the Christian County property in his name alone, and he intended to return the property to the friend upon repayment of the loan. The friend later repaid the loan by purchasing a portion of the Crawford County Farm from the seller for the loan amount. The Calliers paid the seller an additional $150,000 for the purchase. Apparently, the Crawford County Farm property was then deeded to the friend, who then deeded it to Leo Callier in exchange for a deed to the Christian County property. The transaction was structured in this manner for tax purposes. The seller of the Crawford County Farm is not identified in the record, and the deed to Callier was not made part of the record.

During the course of the bankruptcy case, Mr. Gray learned that Mr. Callier executed a contract to sell the Crawford County Farm to his son and daughter-in-law on March 30, 1997, less than two months before Mr. Gray's judgment was entered against him. Mr. Gray thereupon filed an adversary proceeding to avoid the transfer as fraudulent. Subsequently, the bankruptcy court ordered Mr. Callier to sell his interest in the property by a date certain. Plaintiff Donna Callier then filed this adversary proceeding against Leo Callier seeking a declaratory judgment that the Crawford County Farm is owned by the Colliers as tenants by the entirety and requesting reformation of the deed based on mutual mistake in the conveyance, to reflect joint tenancy by the entirety ownership.

2

Leo Callier did not contest the declaratory judgment proceeding. Charles Gray sought to intervene, and, both adversary proceedings were called for trial on the same day, December 20, 1998. At the trial, the parties agreed, and the bankruptcy court permitted Mr. Gray to be joined as a defendant in this declaratory judgment proceeding and that it be tried first. Following the trial, the bankruptcy court made oral and written findings of fact entered on January 19, 2000, concluding that "[t]here was a mutual mistake in the execution of the deed in the failure to reflect that the Crawford County Farm was to [be] owned jointly by Plaintiff and Defendant in tenancy by the entirety."

The conclusion was based on findings by the bankruptcy court that Donna Callier and Leo Callier intended to receive and hold the Crawford County Farm property as joint tenants by the entirety. No findings or conclusions were made regarding the intention or understanding of the grantor in the deed. The bankruptcy court ordered reformation of the deed based on the court's findings and conclusions, and, judgment was entered accordingly.

Mr. Gray asserts on appeal that the bankruptcy court erred in reforming the deed for the Crawford County Farm, based on mutual mistake, because: (1) there was no evidence of mistake in the conveyance on the part of the grantor of the property; and (2) the evidence was insufficient to support a finding of mistake by Leo Callier, grantee party to the instrument, and Donna Callier, in the conveyance. Alternatively, Gray claims that the bankruptcy court erred in applying the equitable remedy of reformation because the equities in the case heavily favor him, not the Calliers. We agree that the bankruptcy court erred in reforming the deed because there was no finding or evidence of mistake in the conveyance on the part of the grantor, and we reverse the judgment without considering the other alleged errors.

II

We review the bankruptcy court's findings of fact for clear error, and we review the trial court's application of the law *de novo*. Bailey v. Amsted Indus., Inc., 172 F.3d 1041, 1044 (8th Cir. 1999); In re Waugh, 95 F.3d 706 (8th Cir. 1996). When faced with a question of substantive state law, a federal court is bound by decisions of the state's highest court. Bass v. General Motors Corp., 150 F.3d 842, 847 (8th Cir. 1998). The issue here is whether, under Missouri law, a deed conveying real property can be reformed upon a showing of mistake in the original conveyance by only one of two parties to the instrument. We conclude it cannot. In reviewing Missouri law on reformation of contracts, we conclude that the bankruptcy court misapplied the law to the facts and the judgment must be reversed.

3

## III

There were two parties to the deed sought to be reformed in this case: an unidentified grantor friend of Leo Callier and Leo Callier, grantee. In general, Missouri law regarding reformation of contracts based on mutual mistake, requires that an alleged mistake be mutual and common to both parties to the instrument in order to justify reformation of a contract. J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club, 491 S.W.2d 261 (Mo. 1973). Quoting from an earlier Missouri Supreme Court case, the Hathman court said:

> We have concluded from examination of the record that a reformation of the contract on the basis of mutual mistake of fact was not justified. In Allan v. Allan, 364 S.W.2d 578, 581 (Mo.1963), this court said: "(A) mistake affording ground for the relief of reformation must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended * * * (A)nd that mutual mistake, in order to justify granting the relief of reformation, must be established by clear and convincing evidence."

Id. at 267, 268.

The Missouri Supreme Court has consistently applied these principles to reformation of deeds conveying real estate for the past one hundred years. Allan v. Allan, 364 S.W.2d 578, 581 (Mo. 1963); Wilhite v. Wilhite, 224 S.W. 448 (Mo. 1920); Benn v. Pritchett, 63 S.W. 1103 (Mo. 1901).

In 1901, the Missouri Supreme Court held, in Benn v. Pritchett, 63 S.W. 1103 (Mo. 1901), that a petition in a suit to set aside a deed on the ground of mistake, which merely alleged mistake on the part of one of the parties, did not state a cause of action, since equity will provide relief from mistake only when mutual to both parties to the instrument, or when induced by fraud.

> The petition charges simply a mistake of Geary in making the deed to the Pritchetts. The decree finds that there was a mutual mistake of both parties, notwithstanding no mutual mistake was alleged in the petition. The petition did not state facts sufficient to constitute a cause of action. The decree supplied the substantial fact whose omission made the petition

4

insufficient. Equity will only relieve against mutual mistakes. The mistake of one party to a contract will not entitle him to relief, unless the other party induced him to act under such mistake, which is not this case. Matthews v. Kansas City, 80 Mo. 231; Cassidy v. Metcalf, 66 Mo., loc. cit. 531; Henderson v. Beasley, 137 Mo. 199, 38 S. W. 950; Steinberg v. Insurance Co., 49 Mo. App. 255; Bartlett v. Brown, 121 Mo. 353, 25 S. W. 1108; Adkins v. Tomlinson, 121 Mo. 487, 26 S. W. 573; Koontz v. Bank, 51 Mo. 275. A mistake of a conveyancer will not constitute a mutual mistake as a ground for a reformation of the instrument, unless he acted for both parties. Brocking v. Straat, 17 Mo. App. 296, loc. cit. 305. The justice of the peace in this case acted for Geary alone. Mistake on one side, without fraud of some kind on the other side inducing the mistake, will not be sufficient to relieve the party making the mistake. Norton v. Bohart, 105 Mo. 615, 16 S. W. 598.

Id. at 1106.

In 1920, the Missouri Supreme Court, in Wilhite v. Wilhite, 224 S.W. 448 (Mo. 1920), again held that reformation of deeds, based on mistake, must involve a mutual mistake of both parties to the instrument.

It may be conceded for the purpose of this discussion that, where an instrument is drawn in language the legal effect of which the parties misunderstand, and which expresses what the parties did not intend to express, a court of equity will reform the contract so as to conform to the intention of the parties. Williamson v. Brown, 195 Mo. loc. cit. 331, 93 S. W. 791; Corrigan v. Tiernay, 100 Mo. loc. cit. 280, 281, 13 S. W. 401; McKim v. Met. St. Ry. Co., 196 Mo. App. loc. cit. 547, 548, 196 S. W. 433.

However, before a court of equity will entertain a bill to reform a contract on the ground of mistake, the mistake must be mutual; that is, the contract must be written in terms which violate the understanding of both parties.

5

Meek v. Hurst, 223 Mo. 688, loc. cit. 696, 122 S. W. 1022, 135 Am. St. Rep. 531; Benn v. Pritchett, 163 Mo. loc. cit. 571, 572, 63 S. W. 1103; Wolz v. Venard, 253 Mo. loc. cit. 82, 161 S. W. 760. The mistake must occur in reducing to writing the contract upon which the parties had agreed; the prior agreement upon the terms of the contract is presupposed. Parker v. Van Hoozer, 142 Mo. loc. cit. 629, 44 S. W. 728; Robinson v. Korns, 250 Mo. loc. cit. 675, 157 S. W. 790; Dougherty v. Dougherty, 204 Mo. loc. cit. 237, 102 S. W. 1099. Proof of the prior agreement, which was erroneously written by mistake, must be clear and convincing. Wall v. Mays, 210 S. W. 871, loc. cit. 872; Crouch v. Thompson, 254 Mo. loc. cit. 487, 162 S. W. 149; Horine v. Royal Ins. Co. (App.) 201 S. W. loc. cit. 959.

Id. at 449.

Subsequently, in 1963, the Missouri Supreme Court stated unequivocally a third time, in Allan v. Allan, 364 S.W.2d 578 (Mo. 1963), that a mistake providing ground for reformation must be mutual and common to both parties to the instrument, and must be established by clear and convincing evidence.

At the outset of our consideration of this appeal we deem it appropriate to quote certain established rules applicable to cases of this nature. '[A] mistake affording ground for the relief of reformation must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended. * * * [A]nd that mutual mistake, in order to justify granting the relief of reformation, must be established by clear and convincing evidence.' Walters v. Tucker, Mo.Sup., 308 S.W.2d 673, 675, 679. "A mutual mistake presupposes a prior or preceding agreement between the parties, and, this agreement of necessity must be shown.' Dougherty v. Dougherty, 204 Mo. 228, 237, 102 S.W. 1099, 1101.' Zahner v. Klump, Mo.Sup., 292 S.W.2d 585, 587.

Id. at 581.

6

The facts in Allan v. Allan reveal that divorce litigation was brought by Thomas Allan's spouse against Allan to partition and sell the Allan family farm that had been deeded during their marriage from Allan's parents to Allan and his spouse. Allan's father died shortly after the conveyance and before the divorce litigation. Allan's mother was a third party defendant in the lawsuit. Allan and his mother claimed that the deed was given conditionally upon the grantors' retaining a life estate, and sought reformation of the deed. The deed made no mention of a life estate, but was an ordinary warranty deed. The Missouri Supreme Court concluded that grounds for reformation did not exist, stating:

> In order to prevail on the issue of reformation it is necessary to show that the mistake was mutual, i. e., common to both parties. In that connection we should perhaps state that we are convinced that there was an agreement between defendant and his parents that they should have the right to occupy the farm as a home as long as either lived. However, it does not appear to have been agreed that that provision would be written into the deed. No witness testified that there was any agreement or understanding that the grantors would reserve a life estate in the deed.

Id.

Donna Callier argues that evidence of a grantor's mistake is not a necessary element to the cause of action for reformation of a deed, citing Shaffer v. Dalrymple, 507 S.W.2d 65 (Mo. Ct. App. 1974).

In Shaffer v. Darlymple, a widow sued to have the deeds to two parcels of real estate, held solely in the name of her deceased spouse, reformed to reflect ownership in them both as joint tenants by the entirety. The lower court ordered judgment reforming the deeds on evidence of mutual mistake on the part of the widow and her deceased spouse, even though there existed no evidence in the record that the grantors were mistaken in the grants of the conveyances. The Missouri Court of Appeals affirmed, stating:

> It is true, as appellants contend, that a mistake affording ground for relief by way of reformation must be mutual and common to both parties to the instrument, and that the mutual mistake must be established by clear and convincing evidence. Allan v. Allan, 364 S.W.2d 578, 581(1--5) (Mo.1963), and cases cited. But what appellants seem to argue is that

7

there is a lack of evidence of mutuality of mistake as between the parties grantor and the grantees to the two deeds in question. * * *

The argument ignores the nature of an action for the reformation of an instrument on the ground of mutual mistake of fact, that the parties affected by the mistake are the only ones who are in interest.' 'It has been held that all parties who possess an actual interest in the matter must be mistaken, but it is enough if the mistake is mutual as between the real parties in interest, or between the parties affected thereby.' 76 C.J.S. Reformation of Instruments, s 28C., p. 368; 'On the other hand, it has been held that reformation may be sought on the ground of mistake without joining a party to the mistake where it appears that such party no longer has an interest in the subject matter of the litigation, such as in the case of an action between the grantees of a common grantor.' 66 Am.Jur.2d, s 100, p. 632. See also 76 C.J.S. Reformation of Instruments s 70, p. 425, stating, 'The grantor in the deed sought to be correct is a necessary party, at least where the conveyance contains covenants of warranty, * * *; but there is some authority restricting the application of this rule and holding that necessary parties to the action do not include grantors who have conveyed their whole title and interest in the property which will be affected by reformation, * * *.' (Italics added.) Both Connecticut General and the Meltons, as grantors, conveyed their entire interests in the lands by the deeds in question. They were not necessary parties to this suit. Rule 52.04(a), V.A.M.R. The inquiry here is only the sufficiency of the evidence to show a mutual mistake of fact at the time the deeds were made as between respondent and deceased.

Shaffer v. Dalrymple, at 69, 70.

Shaffer v. Dalymple seems to us clearly contrary to Missouri law of reformation of contracts, consistently articulated by the Missouri Supreme Court for at least seventy-five years prior to Shaffer. In addition to the fact that we are bound to follow the law of Missouri as determined by that state's highest court, Bass v. General Motors Corp., 150 F.3d 842, 847 (8th Cir. 1998), there are additional reasons

8

why we do not find Shaffer to be controlling Missouri law, either generally, or with respect to the facts of this case.

The same appellate court recently declined to follow Shaffer, even though it had the clear opportunity to do so. In Morris v. Brown, 941 S.W.2d 835 (Mo. Ct. App. 1997), Morris, who purchased property from one Boone, received title by life estate with remainder in her two daughters as tenants in common. One of the daughters predeceased Morris, who then sought reformation of the deed based on mutual mistake to reflect a life estate in Morris with the remainder in her daughters as joint tenants. The trial court ruled in her favor.

The Missouri Court of Appeals reversed the trial court, specifically holding that evidence was insufficient to support reformation of a deed where there exists no evidence of mistake on the part of the grantor party to the instrument. The Morris court implied that a grantor is inherently a party affected by a mutual mistake and a proposed reformation, whether or not required to be a party to a reformation proceeding itself.[2]

One of the assigned errors on appeal in Morris was that the petition for reformation failed to plead a cause of action due to failure of the petitioners to specifically plead mistake on the part of the grantor. The appeals court found the petition to be adequate, in this discussion:

> A well-pled petition for reformation of a deed because of mutual mistake
> is characterized by three elements:
> preexisting agreement between the parties affected by the proposed
> reformation that is consistent with the change sought; that a mistake was
> made in that the deed was prepared other than had been agreed upon;
> and that the mistake was mutual, i.e., was common to both parties.
>
> Wates v. Joerger, 907 S.W.2d 294, 296 (Mo.App.1995); see also
> Cockrell, 762 S.W.2d at 881. Here, in Count II of respondents' petition,
> they did request reformation of the deed as a result of mutual mistake. In
> this respect, the respondents alleged in their petition that "the parties to the

---

[2]The grantor, Boone, was not a party in the Morris v. Brown lawsuit.

9

deed of February 28, 1973 and, in particular, the Grantees thereof Louise Massey, Norma Summers (now Lemons) and Nellie Morris intended that the interest of the Grantees be a survivorship interest...." L.F. 6 (emphasis added). Although this allegation is not a model in pleading reformation of a warranty deed for mutual mistake and does not specifically mention the grantor, Boone, as to his intent in regard to the deed, giving it a liberal and favorable construction to respondents, we cannot say that respondents' petition as a whole failed to adequately plead the three necessary elements of reformation based on mutual mistake.

Morris v. Brown, at 839, 840.

The Morris court went on to reverse the trial court, however, in part on insufficiency of the evidence to show mistake on the part of the grantor, Boone. Applying the law to the facts of the case, the court reasoned:

Appellants contend that because Boone never specifically agreed with the grantees to title the property in Massey and Lemons as joint tenants, there never was a preexisting agreement with the grantor, and thus, no mutual mistake supporting reformation. On the other hand, respondents contend that it was not necessary to discuss the specifics of the titling with Boone in that it was implied in the sale agreement that Boone agreed to convey the land in whatever form the grantees desired. They argue that this alone is sufficient to establish a preexisting agreement between the grantor and grantees to find a mutual mistake supporting reformation of the deed. In support of their argument, respondents rely on the testimony of the realtor, Rita Stephens, who handled the sale for the grantor. She testified that the real estate contract here had been lost or destroyed. However, she testified that in this case, as is the case in most sales of real estate, Boone's only interest or concern in selling the real estate was to obtain the price at which the land was offered, and that it was implied in the agreement to sell, that Boone agreed to title the property in whatever manner the grantees chose, otherwise there would not be a sale. This argument of

10

respondents would certainly have some merit if, in fact, there was a showing that Boone at the time of conveyance was aware of how the grantees wanted the property titled. Otherwise, how could it be said that Boone intended the real estate to be titled as a joint tenancy and it was not, and thus, the alleged mistake in the language of the deed frustrated his intent as to the titling of the property, creating a mutuality of mistake as to what interest was conveyed by the deed? On this issue, there is no evidence that Boone was ever advised that the property was to be titled in Massey and Lemons as joint tenants.

Morris v. Brown at 841. Shaffer v. Dalrymple, 507 S.W.2d 65 (Mo. Ct. App. 1974), is not mentioned in the Morris v. Brown decision. Even if the Missouri law of reformation of contracts was not well settled by the Missouri Supreme Court, we would be persuaded by the more recent Morris v. Brown, 941 S.W.2d 835 (Mo. Ct. App. 1997).

Finally, even if Shaffer v. Dalrymple, 507 S.W.2d 65 (Mo. Ct. App. 1974) was the controlling Missouri law on reformation of contracts, the trial court's legal conclusions and judgment would not be sustainable. The bankruptcy court did not specifically find that Leo Callier's grantor was not affected by the alleged mistake or proposed reformation. Nor can the finding be inferred, since the record does not disclose the identity of the grantor, what he understood, what he was told, what he assumed, or, what he intended in the transaction.[3] A finding of unaffectedness is critical to the Shaffer rationale that an unaffected grantor need not have been mistaken in the transaction for a viable cause of action to exist between grantees and others.

In conclusion, there were two parties to the instrument sought to be reformed in this case: an unidentified grantor friend of Leo Callier and Leo Callier, grantee. In order to sustain a cause of action for reformation of the deed based on mutual mistake, Missouri law requires that both parties to the instrument

---

[3]If anything, the dynamic of the transaction seems to indicate that the grantor might indeed be affected by the alleged mistake and proposed reformation of the deed. As we understand the record, the grantor's participation in the transfer of the Crawford County Farm property was to enable him to get back his Christian County property through a land exchange that would qualify as a like kind property exchange and tax free transfer under 26 U.S.C. § 1031. Generally, exchanges must be among the same taxpayer owners to qualify under the statute.

must have been mistaken in the conveyance, established by clear and convincing evidence. There was no finding by the bankruptcy court that the grantor party to the instrument was mistaken in the conveyance, and there is no evidence in the record from which such a finding could be made. Therefore, we conclude that the trial court erred in application of Missouri law by reforming the deed, based on unilateral mistake of the grantee Leo Callier.

IV

Accordingly, the judgment of the bankruptcy court is reversed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT