DENA DOUGHERTY et al., Appellants, v. B. J. DOUGHERTY et al., Appellants.

### Division One, May 29, 1907.

1. **WILL: Power to Sell: Power to Mortgage.** A will by which testator devised his property to his wife, for and during her natural life, with the discretionary power to sell any or all of said property for the support of herself and children, did not give her power to mortgage the property, or to borrow money and secure its payment by a deed of trust on the property. The power to sell is not a power to mortgage or convey by deed of trust.

2. **REFORMING DEED: Mistake: Prior Agreement.** Courts of equity will reform a deed where there is cogent and convincing proof of a mutual mistake, but a mutual mistake presupposes a prior or preceding agreement between the parties, and that agreement must of necessity be shown.

3. ——: ——: **Mutual: Scrivener.** Where the mistake is in the description, and the scrivener acts wholly for the grantee and in the absence of the grantor, the mistake shown to be his is not thereby shown to be mutual, but is unilateral.

4. ——: ——: ——: ——: **Pleading.** A pleading that fails to allege that the alleged mistake in the description of the land was a mutual mistake of both grantor and grantee, is fatally defective. A necessary averment is that the scrivener (who admits that the mistake was his) acted under the direction of both grantor and grantee in drawing the deed; otherwise, the pleading does not charge the mistake to be mutual.

Appeal from Knox Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

*O. D. Jones* for plaintiffs.

(1) The power in the will did not authorize Ellen Dougherty to mortgage the land. Price v. Courtney, 87 Mo. 387; McDonald v. Quick, 139 Mo. 484; Garland v. Smith, 164 Mo. 1. (2) A court of equity does not interfere to correct an instrument "unless it also ap-

Dougherty v. Dougherty.

pears that its interference is necessary to prevent the perpetration of a fraud or some injustice." Mann v. Best, 62 Mo. 496; Ins. Co. v. Landis, 50 Mo. App. 116; Harkless v. Co., 85 Mo. 619; Schradski v. Albright, 93 Mo. 43. "When there is no fraud and a party accepts a quitclaim deed, he is without remedy." Smith v. Funk, 57 Mo. 239. The answer does not aver or show that the mistake sought to be reformed was a mutual one of both parties. It avers the mistake was made by a draughtsman, but it does not aver who employed him, whether he was the agent of one or both parties. If of only one, which one? In fact, Mr. Linville who wrote the deed and made the mistake was employed by the defendants. This is a fatal error. Brocking v. Straat, 17 Mo. App. 296; Benn v. Pritchett, 163 Mo. 560; Bosley v. Bosley, 85 Mo. App. 424; Meredith v. Holmes, 114 Mo. App. 343. (3) There is no evidence on which to base and the court does not find the mistake was mutual. Mary asked Mr. Linville, an old man, to write the deed "in a hurry" and he made the mistake. He was her agent and his mistake was hers and she is asking the court to correct the result of her own carelessness. Miller v. Railroad, 162 Mo. 441; Meredith v. Holmes, 105 Mo. App. 352. The proof must be cogent and convincing. Bunse v. Agee, 47 Mo. 270; Able v. Ins. Co., 26 Mo. 56; Modrell v. Riddle, 82 Mo. 31; Curd v. Brown, 148 Mo. 82.

*D. A. Rouner* and *L. F. Cottey* for defendants.

(1) The mistake made in the deed was mutual between the grantors and the grantees, the grantors intending to convey property in block five and the grantees believing that they had conveyed to them the property in block five. And the evidence produced is clear and convincing that there was a mutual mistake in the description of the property conveyed. P. B. Linville's testimony. Under such circumstances a court of equity

will correct a mistake in such deed. O'Day v. Meadows, 194 Mo. 614; Rice, Stix & Co. v. Sally, 176 Mo. 131; Hunter v. Patterson, 142 Mo. 310; Williams v. Brown, 195 Mo. 332. The description in a deed will be construed most strongly against the grantors. Cochran v. Railroad, 94 Mo. App. 469. The description in a deed should be so construed as to give effect to the manifest intention of the parties. A construction which would cause a deed to perish because of a mistake or a palpable error of the scrivener should not be upheld, if the manifest intentions of the parties may be gathered by using a part of the calls and disregarding others. Preswell v. Headly, 141 Mo. 194. (2) The court erred in its finding that Dena Dougherty was entitled to dower in said estate and also erred in its finding that the present value of the dower in the property described in the petition was $467.25. The present value was ascertained according to the rule laid down in Laws 1893, entitled Dower, relating to computation of present value of life estates, section 1, page 167. (3) The mistake was mutual and neither of the parties, grantors nor grantees, having any knowledge of the mistake in the description of the property in said deed until just before the filing of the petition in this suit, the defendants are not guilty of laches in not bringing a suit to reform said deed. Dye v. Bowling, 82 Mo. App. 587. These facts and all the circumstances considered with the testimony of P. B. Linville seem to be conclusive evidence of a mutual mistake in said quitclaim deed. There is no evidence of undue influence, no evidence of fraud, covin or deception having been practiced on the grantors by the grantees or by any one for them as alleged in plaintiffs' petition. The allegation that their conduct is collusive, oppressive and fraudulent is a mere allegation and will not suffice. Nagel v. Railroad, 167 Mo. 89; Smith v. Simms, 77 Mo. 274; Goodson v. Goodson, 140 Mo. 218.

GRAVES, J.—John Dougherty, a resident of Edina, Knox county, Missouri, departed this life in January, 1874. He owned at the date of his death lots 5, 8, 9 and 10 in block 5, in the original town, now city, of Edina. His heirs were Ellen Dougherty, widow, and four children, Bernard, Mary C., Catherine, and John A. S. Dougherty. The said John Dougherty left a will by which all this property was devised to the wife Ellen, for and during her natural life or widowhood, with discretionary power to sell any or all of said property for the support of herself and children. At her death or remarriage, the remainder was to go to the four children, in equal portions. The widow of John Dougherty died in 1884, but prior to her death had placed a deed of trust on all of her said property, except lot 5, to secure a note of $1,780.77, payable to one Linville. After her death and after the expiration of nine months thereafter, this deed of trust was foreclosed, and the land purchased by James Dougherty, a brother of John Dougherty, who had previously acquired the Linville note, the consideration in the trustee's deed being $2,000. May 9, 1898, three years after the trustee's sale, James Dougherty by deed of quitclaim, for the expressed consideration of $5, conveyed the property to Mary C. Gangloff, formerly Mary C. Dougherty, and Catherine Dougherty.

At the December term of the Knox Circuit Court for the year 1900, Anthony Gangloff, husband of Mary C. Gangloff, formerly Mary C. Dougherty, procured judgment against John A. S. Dougherty in the sum of $917.81, debt, and $41.15, costs, for money due him personally from John A. S. Dougherty. In 1903 he caused execution to be issued on his judgment and levy to be made on all the property owned by the father, John Dougherty, viz: lots, 5, 8, 9 and 10 of block 5, as described hereinbefore. At the sheriff's sale under such execution, Anthony purchased said property, the

expressed consideration in the sheriff's deed being $100.

On January 14, 1897, John A. S. Dougherty, joined therein by his wife, Dena, executed a quitclaim deed to Mary C. Gangloff and Catherine Dougherty, conveying to them all his right, title and interest, in and to lots 5, 8, 9 and 10, in block 6, original town, now city, of Edina. It will be observed that the numbers of the lots are the same, but the block is 6 instead of 5, as in the description of the property owned by John Dougherty, deceased. This deed is one of the storm centers of the suit, in this appeal involved. At the execution of this deed, John A. S. Dougherty was living in Butte, Montana.

Later, John A. S. Dougherty returned with his family to Edina, Missouri, and after a period of about three years from the date of his return, and on May 25, 1903, he instituted his suit in the circuit court of Knox county against Mary C. Gangloff, Catherine Dougherty and Anthony R. Gangloff, in the first count of which he sought to have the deed of trust and the trustee's deed, hereinabove mentioned, cancelled, as also the deed from James Dougherty to defendants Mary C. Gangloff and Catherine Dougherty, and he also sought to have the sheriff's deed to Anthony R. Gangloff cancelled, and asked the court to decree that he owned an undivided one-fourth interest in the said property. By second count he prayed for partition of the property and that an accounting be had of the rents and profits. After the institution of this suit John A. S. Dougherty died, and the suit was revived in the name of Dena Dougherty, his widow, and Antonio Dougherty, a minor, by O. D. Jones, guardian *ad litem*. An amended petition was filed, in which the necessary changes were made to meet the conditions of things.

To this petition, Mary C. Gangloff and Catherine Dougherty answered by denying that John A. S.

Dougherty at his death owned any interest in said property, and further pleaded in their answer the quitclaim deed from John A. S. Dougherty and wife Dena, to them, as above mentioned, and asked for the reformation of said deed so that it would read "block 5" instead of "block 6." Some question is made as to the sufficiency of this answer upon this point, which will be noticed later.

Anthony R. Gangloff, by answer, denied that John A. S. Dougherty had any interest in the property at the time of his death, and averred that he acquired all of his interest at the sheriff's sale, and by the sheriff's deed, hereinabove described.

Reply was a general denial.

By its judgment, the court refused to reform said deed as to Dena Dougherty, and found that she was entitled to a dower in one-fourth of all the property, and that the value of the property was $5,500, and that her damages for deforcement of her dower since the death of her husband was $60, and that she was entitled to recover from the defendants the sum of $527.25, which included her dower and the $60 damages. The court also found and adjudged the monthly rents and profits to be forty dollars per month. The court reformed this quitclaim deed as to the minor plaintiff, Antonio Dougherty, so as to make said deed of quitclaim from John A. S. Dougherty to Mary C. Gangloff and Catherine Dougherty to read "block 5" instead of "block 6." The court also cancelled the deed of trust, and the trustee's deed thereunder, as well as the quitclaim deed from James Dougherty to the said Mary C. Gangloff and Catherine Dougherty. No action was taken by the court as to the sheriff's deed, as the court in the judgment said the interest of John A. S. Dougherty had previously passed by the quitclaim deed. The petition of the infant son of John A. S. Dougherty, Antonio, was dismissed. In the trial

it was admited that Bernard Dougherty had conveyed his interest to his sister Mary C. Gangloff and Catherine Dougherty. The $527.25 to Dena Dougherty was made a lien upon the land, the court having found that dower could not be set off in kind.

From this judgment, the minor, Antonio, appealed, as did also the defendants, so that we have cross appeals. Further portions of the pleadings, evidence and judgment will be noticed in the opinion, but this substantially states the case and the contentions.

I. The trial court committed no error in cancelling the deed of trust to Linville, executed by the widow of John Dougherty. Nor was there error in cancelling the trustee's deed under said deed of trust and the quitclaim deed from James Dougherty, the purchaser at the trustee's sale, to Mary C. Gangloff and Catherine Dougherty.

The power given to the widow by the will of John Dougherty was a power to sell, and not a power to mortgage or otherwise encumber the property. The entire context of the clause in the will granting the power will lend no aid to a contrary view. The general rule is, that a power to sell does not give life to a mortgage or deed of trust executed under such power. In other words, a power to sell is not a power to mortgage or to convey by deed of trust. [Price v. Courtney, 87 Mo. 387; Garland v. Smith, 164 Mo. 1; 18 Am. and Eng. Ency. of Law (1 Ed.), 940, and cases cited.]

There are some cases where a contrary doctrine is expressed, the opinions resting upon the peculiar wording of the clause granting the power and the peculiar purpose of the grant, but there is nothing in this case which would even bring it within the doctrine of these cases. Thus it follows that the judgment of the trial court is so far correct.

II. We next reach that portion of the judgment of the trial court wherein the deed from John A. S. Dougherty and Dena Dougherty, his wife, to Mary G. Gangloff and Catherine Dougherty was reformed. By this judgment the deed was reformed as to Antonio Dougherty, the infant child of John A. S. Dougherty, but not as to Dena Dougherty, the widow. From this judgment both sides appeal, the plaintiffs contending that there should be no reformation of the deed, and the defendants claiming that there should have been a reformation as to the widow as well as the heir. The question then is, should this deed have been reformed at all, and if so to what extent? Answer to the question will require a review of the evidence as to how the deed came to be made. All of the evidence upon this question in the abstract before us, is as follows:

"P. B. Linville said: I have resided in Edina about sixty years. I am acquainted with the Dougherty family. I knew John and all the children. I did business for the Dougherty family.

"Q. I will ask you to know whether or not Mrs. Gangloff and her husband and Kate ever furnished John Dougherty any money or not. A. Yes, sir; at least they told me so.

"Objected to for the reason it is so indefinite it would not elicit any facts in the issue in this case. It is hearsay.

"By the court: All the court now wishes to hear is whether or not there was a mistake in that deed; the consideration is not attacked.

"Q. Do you remember of being called upon about the month of June or January, 1897, to write a deed? A. Yes, sir.

"Q. For the interest of John Dougherty in this property as heir? A. The question was this: Mrs.

Gangloff came to me and wanted three hundred dollars to send to her brother John.

"Objected to — not responsive — it is not stated in the pleadings and there is not an allegation to which it would be responsive and because John A. S. Dougherty is dead and it is simply putting words in her mouth.

"By the court: All I care for is, under the present condition of the pleadings, whether or not there is a mistake in that deed—the consideration in the deed is not questioned.

"The deed shown me is in my handwriting, dated January 14, 1897. I wrote it at the suggestion of Mrs. Gangloff. She wanted to send $300.

"The last clause objected to. Objection overruled, to which plaintiff's counsel excepted and saves exception.

"I wrote it at the suggestion of Mary Gangloff. I now see I made a mistake in writing that deed. It is my fault the deed is wrong, because I have a lot in the same block. Mr. Dougherty has no lots in block six. I live in block seven. How I came to make the mistake I am not able to tell. I intended to describe the property in block five, of the original town of Edina, all his property in that block, lots 5, 8, 9 and 10, but by mistake I wrote it in block six when it should have been five. It was a mistake of mine.

"By the court: That shows Mr. Dougherty made a mistake when he signed the deed.

"Q. Who executed the deed?

"By Mr. Jones: It shows for itself. A. John Dougherty, I suppose. I did not see him sign it.

"Q. This deed was then for this property — was sent to them signed and executed? A. Yes, sir. Three hundred dollars was got out of the bank the same day, my books show.

"Objected on grounds not responsive.

"By the court: Objection sustained — the consideration of the deed is not attacked.

"Deed offered and read in evidence.

"I gave the deed to Mrs. Gangloff after I wrote it to send away by mail.

"I wrote it in a great hurry. She was in a great hurry to get it away.

"Quitclaim deed dated 14th January, 1897, John and Dena Dougherty of Butte City to Mary Gangloff and Kate Dougherty for the sum of one dollar 'remise, release and forever quitclaim' the lots described 'in block 6' original Edina, Knox county, Missouri. To have and to hold it. Signed and sealed by first parties. Acknowledged before a district judge of the State of Montana and being a judge having a common law jurisdiction. Seal. Filed for record in Knox county, March 4, 1897."

The above and the mere fact that the John Dougherty property was in block five is the evidence upon this branch of the case. Does such evidence authorize a reformation of the deed? We think not.

There is no cogent and convincing testimony in this record showing a mutual mistake. Courts of equity will reform a deed where there is cogent and convincing proof of a mutual mistake, but such is not the record before us. A mutual mistake in a written instrument presupposes a prior or preceding agreement between the parties. To show the mutual mistake in the written instrument, the preceding agreement must *ex necessitate* be shown. There is no evidence of any agreement between the parties save and except the one expressed in the deed. Parties, when requested, and for a very nominal consideration, often make quitclaim deeds to property in which they claim no title or interest. There is in this record no evidence of any preceding agreement upon the part of John A. S. Dougherty to convey his interest in his father's estate, which

included the property in dispute, but not the property deeded. We might surmise that it was his purpose to convey his interest in his father's estate, but surmises do not meet the full measure of the law, which requires the proof to be cogent and convincing. Nor will it do to say that the mistake of the scrivener Linville will suffice to show a mutual mistake. Where the scrivener acts for both parties and makes the mistake, then proof of his mistake establishes the mutual mistake, for he was the agent of both parties. This record shows that Linville acted under the sole direction of one of the grantees, and in the absence of the grantor. His mistake was the mistake of the grantees, but not the mistake of the grantor, for whom he in no way acted, under the proof in this case. . The mistake is purely unilateral and one which courts of equity do not reform. [Grand Lodge A. O. U. W. v. Sater, 44 Mo. App. l. c. 453; Meredith v. Holmes, 105 Mo. App. l. c. 352; Brocking v. Straat, 17 Mo. App. l. c. 305; Benn v. Pritchett, 163 Mo. l. c. 572; Miller v. Railroad, 162 Mo. l. c. 440-441.]

In the first case above cited, Briggs, J., says: "But all decisions and text-books assert the principle that the mistake must be mutual and not unilateral. [1 Story, Eq., sec. 151; Gwin v. Waggoner, 98 Mo. 315; Allen v. Carter, 8 Mo. App. 585.] It is also a well-settled rule that the evidence relied on to prove the mistake must be clear and convincing. [Downing v. McHugh, 3 Mo. App. 594; Allen v. Carter, supra; Tesson v. Ins. Co., 40 Mo. 33.]"

In Meredith v. Holmes, 105 Mo. App. l. c. 352, Bland, P. J., expresses it thus: "So strong is the legal presumption that a written contract, unambiguous and complete in itself, contains all the terms of the agreement between the parties, that parol evidence will not be heard in an action on a contract to vary or contradict its terms. [Evans v. Mfg. Co., 118 Mo. 548;

Tracy v. Iron Works, 104 Mo. 193; Black River Lumber Co. v. Warner, 93 Mo. 374; Bunce v. Beck, 43 Mo. 266.] Correlated to this rule, is the rule in equity suits to correct a written contract on the ground of mistake, that casts upon the party asserting the mistake the burden of overthrowing, by evidence that is clear and convincing, the prima-facie presumption that the contract exhibits the ultimate agreement of the parties, and of showing that the mistake was mutual. [Judson v. Mullinax, 145 Mo. 630; Parker v. Vanhoozer, 142 Mo. 621; Sweet v. Owens, 109 Mo. 1; Gaylord v. Insurance Co., 40 Mo. 13; Benn v. Pritchett, 163 Mo. 560.]''

Considering more particularly the mistake made by a scrivener acting under the directions of only one of the parties, ROMBAUER, J., in the Brocking case, supra, uses this language: ''Plaintiffs' counsel contends that the rule which requires proof that the mistake was mutual does not apply to a case where the mistake is that of a scrivener. This argument springs from a misconception of methods of proof. Where it clearly appears that the scrivener acted by direction of both parties, he stands as agent of both parties to that extent, and satisfactory proof of his mistake is proof of the mutual mistake of the parties themselves. Where such facts were shown, proof of the scrivener's mistake was held sufficient as direct proof of a mutual mistake, and not as dispensing with such proof. To that extent the rule in regard to the scrivener's mistakes is logical and correct; beyond this it is unsupported alike by reason and authority. In the case at bar the scrivener received his directions from George Rinkel alone. The evidence fails to show that he was employed by any one else, or instructed by any one else. He and George Rinkel both testify that he did not draw the deed according to George Rinkel's directions, and there the proof stops. It is true that from all the surrounding circumstances an inference may be drawn which in

ordinary trial of facts might justify a finding on the theory of probabilities. We are clear, however, that this cannot be done where the reformation of an instrument is sought.''

And to a like effect is the language of MARSHALL, J., in Benn v. Pritchett, wherein it is said: ''A mistake of a conveyancer will not constitute a mutual mistake as a ground for a reformation of the instrument, unless he acted for both parties. [Brocking v. Straat, 17 Mo. App. 296, 1. c. 305.] The justice of the peace in this case acted for Geary alone. Mistake on one side, without fraud of some kind on the other side inducing the mistake, will not be sufficient to relieve the party making the mistake. [Norton v. Bohart, 105 Mo. 615.]''

We therefore hold that under the proof in this record, there should have been no reformation of this deed at all, and there was error in the judgment of the court in so far as the deed was reformed as against the minor plaintiff, Antonio Dougherty.

III. The answer of defendants Mary C. Gangloff and Catherine Dougherty is fatally defective in failing to aver that the alleged mistake was a mutual mistake. The only mistake charged in the portion of the answer where they ask affirmative relief is that the scrivener made a mistake in drawing the deed. There was no averment that he was acting under the directions of both parties, a necessary averment to make his mistake the mutual mistake of the grantors and grantees.

In actions for reformations of written instruments for mistake, the pleadings must aver the mistake to be mutual, and the evidence thereof must be clear, cogent and convincing.

IV. The petition asked for the cancellation of the sheriff's deed to defendant, Anthony Gangloff, described in our statement of facts. The evidence is

meager upon this question. The trial court refused to pass upon the question, in this language: ''In view of the fact that the title of the deceased had passed by the quitclaim deed prior to its execution, that the court will take no action as to the sheriff's deed mentioned in the pleadings.'' The meagerness of the evidence upon this part of the case may be owing to a remark of the trial judge when Linville gave his testimony. After Linville said that he made the mistake in writing the deed, the court said: ''That shows Mr. Dougherty made a mistake when he signed the deed.'' In this remark the court was in error, but it no doubt had the effect of preventing counsel for plaintiffs from fully developing the facts as to the sheriff's deed. The sheriff's deed can in no wise affect the rights of the widow, and as the case will have to be reversed as to the infant, Antonio, the evidence can be fully introduced upon a retrial.

Complaint is urged that the dower interest as found by the court is excessive. This cause was tried in 1904. The calculation is correct under sections 2 and 3 of Act of March 18, 1903, the law in force at the time. This law, however, was repealed by Act of April 8, 1905, under which the dower interest would not be so great by some sixty-odd dollars.

From what has been said it follows that this judgment should be affirmed, so far as Dena Dougherty is concerned, and reversed and remanded in so far as it affects Antonio Dougherty, to be retried as to his interest, in accordance with the views herein expressed. It is so ordered. All concur.