**Arthur Joe COX, Respondent,**

v.

**Jack COX, Personal Representative of the Estate of John G. Cox, Deceased, et al., Appellants.**

**No. 14798.**

Missouri Court of Appeals, Southern District, Division One.

March 5, 1987.

Kevin M. FitzGerald, Taylor, Stafford, Woody, Cowherd and Clithero, Springfield, for appellants.

Scott B. Stinson, Mountain Grove, for respondent.

CROW, Chief Judge.

Arthur Joe Cox ("Joe") filed this suit to reform a warranty deed executed October 30, 1974, by his father, John G. Cox ("John"). By that instrument, John conveyed to Joe certain land referred to at trial as "the old home place forty." Joe's petition averred it was John's intent that the deed include an additional tract, referred to at trial as "the schoolhouse forty," but that attorney A___, who drafted the deed, left out the description of that tract. The trial court so found, and entered judgment reforming the deed by adding thereto the description of the schoolhouse forty. This appeal, by certain defendants identified *infra*, followed.

John, a widower, died intestate February 12, 1984, 11 days short of reaching age 99. His wife, Bessie, had preceded him in death July 8, 1974. At time of trial,[1] seven of John's ten children were alive: Joe, Jack Cox, Johnny Cox, Virgil Cox, Starlin Cox, Ethel Hartley, and Anderson J. Cox. As to the three deceased children, one, as we understand the record, left no progeny. The other two deceased children were evidently survived by a total of five offspring: Murb Cox, Ray Cox, Velda Liles, Tom Cox, and Kathy Barnes.

Joe, in his petition, named as defendants the personal representative of John's estate, and all of John's living lineal descendents except himself.

While the cause was awaiting trial, Starlin Cox executed a quitclaim deed, conveying any interest he had in the schoolhouse forty to Joe. During trial, Ethel Hartley, with leave of court, filed an answer consenting to judgment reforming John's 1974 deed to Joe by adding thereto the description of the schoolhouse forty. That, as we have seen, is what the trial court did. All defendants except Starlin and Ethel appeal.

■ The scope of our review in this court-tried case is established by *Murphy*

---

1. The cause was tried January 29 and 30, 1986.

*v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976). The judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

The trial court's findings included these: "The Court further finds by clear and convincing evidence that it was the intention of grantor John ... and grantee ... Joe ... to include in [the 1974 warranty deed] the description of [the schoolhouse forty], but that due to a scrivenor's [sic] error said parcel was inadvertently omitted. The Court finds and determines from the evidence that there was a prior agreement between grantor and grantee commencing in calendar year 1956 and continuing up to the date of execution of said deed to the effect that John ... did promise to convey to son ... Joe ... said forty (40) acre parcel (referred to throughout the trial as 'the schoolhouse 40') at some time prior to his death. In reliance thereon [Joe] constructed at his expense a single family residence in which he raised his family for some years and rented out to third parties from time to time up to the date of trial of this cause. The Court further finds that on October 30, 1974 grantor John ... and ... grantee ... Joe ... did instruct the scrivenor [sic] to include said forty acre parcel in the afore-mentioned [sic] deed, but said tract was inadvertently omitted.[2] The Court further finds that neither of the parties to said deed discovered the omission until after the date of death of grantor John ..., and that said omission constituted a mutual mistake between grantor and grantee."

■ Appellants remind us that he who seeks reformation of a deed is required to establish, by clear, cogent and convincing proof, that there was a prior agreement to convey the land within the reformed description, and that there was a mutual mistake of fact in the preparation of the deed.

*Flaspohler v. Hoffman,* 652 S.W.2d 703, 708[5,6] (Mo.App.1983). In segment "A" of their first assignment of error, appellants maintain that Joe failed to present clear, cogent and convincing evidence of an agreement between him and John whereby the latter was to deed both the old home place forty and the schoolhouse forty to Joe. Appellants argue that Joe's evidence, at best, established an agreement whereby John was to deed only the old home place forty to Joe.

We have carefully studied the 246–page transcript and the exhibits that accompany it, and we are firmly convinced—as was the trial court—that Joe established, by clear, cogent and convincing evidence, an agreement between him and John whereby Joe was to be given both forties. Indeed, a stronger case on that issue could hardly be imagined. Joe's evidence included not only his own testimony, but that of other witnesses including his sister, Ethel Hartley, and his brother, Starlin, both of whom quoted John as saying he intended to give Joe both parcels. Their testimony in Joe's behalf is significant in that it was, obviously, adverse to their own pecuniary interests as heirs of John.

■ We hold that the trial court's finding on that issue is supported by clear, cogent and convincing evidence, and that no error of law appears in regard thereto. We also determine that an opinion containing an exhaustive recital of the evidence on that issue would have no precedential value. Accordingly, the trial court's finding that there was an agreement between John and Joe, prior to the execution of the 1974 warranty deed, that John would convey both forties to Joe, is affirmed in compliance with Rule 84.16(b), Missouri Rules of Civil Procedure (18th ed. 1987).

In segment "B" of their first assignment of error, appellants assert that the evidence failed to establish a "mutual mistake" between John and Joe whereby the schoolhouse forty was inadvertently omitted from the 1974 warranty deed. Appellants

2. The old home place forty consists of three separately described plots, the legal descriptions of which aggregate 20 typewritten lines in the

deed A—— prepared. The description of the schoolhouse forty, set forth in Joe's petition, requires three typewritten lines.

insist the evidence revealed that A—— prepared the deed "solely upon the instruction of John," and that A—— acted "solely as the agent of John." It follows, say appellants, that any mistake of A—— "is considered, by law, to be unilateral in nature."

Discussion of that proposition requires a synopsis of the evidence regarding A——'s preparation of the deed.

Joe testified that John and Starlin picked him up at his home, and the trio went to A——'s office. Asked what information John furnished A——, Joe replied, "A bunch of old deeds."

Starlin's testimony confirmed Joe's. Starlin testified:

"Q. ... Did your father bring anything with him to take to [A——]?

A. He brung some deeds.

Q. Did your father take the abstract?

A. He didn't have no abstract.

Q. He didn't have it with him or never had one?

A. Never had an abstract in his life.

Q. How come?

A. He didn't believe in it."

Asked about the instructions John gave A——, Joe replied, "[D]ad told him he did not want his land in Probate Court." Joe added that John directed A—— to make a deed conveying the old home place forty and the schoolhouse forty to Joe. At the same time, John instructed A—— to make another deed conveying a different parcel, also owned by John, to Starlin. That parcel is not involved in this litigation.

Starlin's testimony about John's directives to A—— paralleled Joe's testimony.

John, Joe and Starlin waited in A——'s office while the deeds were prepared. John signed both deeds in A——'s office. Asked who paid A—— for drafting the deeds, Starlin answered, "I paid for mine; Joe paid for his."

Appellants cite *Dougherty v. Dougherty*, 204 Mo. 228, 102 S.W. 1099 (1907), for the proposition that where a scrivener acts as the agent of one individual to a transaction, a mistake of the scrivener is considered to be unilateral in nature and not mutual. While we do not dispute that proposition as

an abstract statement of law, we fail to see that it applies here.

*Dougherty* arose from an intricate set of facts, which we need not narrate in toto. Pertinent to appellants' contention, one of the issues in *Dougherty* was whether a quitclaim deed should be reformed by correcting an error in the property description. On that issue, the opinion in *Dougherty* stated there was no evidence that, prior to execution of the deed, the grantor had agreed with the grantees to convey the property that the grantees averred the deed should have described. The opinion explained that the scrivener drew the deed at the request of one of the grantees; it was then mailed to the grantor, who lived in another state, and executed by him there. On those facts, *Dougherty* stated:

"Nor will it do to say that the mistake of the scrivener ... will suffice to show a mutual mistake. Where the scrivener acts for both parties and makes the mistake, then proof of his mistake establishes the mutual mistake, for he was the agent of both parties. This record shows that [the scrivener] acted under the sole direction of one of the grantees, and in the absence of the grantor. His mistake was the mistake of the grantees, but not the mistake of the grantor, for whom he in no way acted, under the proof in this case. The mistake is purely unilateral, and one which courts of equity do not reform." 102 S.W. at 1101–02.

Appellants' theory, as we comprehend it, is that because John, alone, told A—— what land he wanted to convey and to whom he wanted to convey it, A——, in drafting the deeds, acted solely as the agent of John, hence the omission of the schoolhouse forty from the deed to Joe, if a mistake, was unilateral, and thus not reformable.

In addressing that contention, we begin by emphasizing that the trial court found John did instruct A—— to include the schoolhouse forty in the deed to Joe, but A—— inadvertently omitted that tract. That finding, like the one attacked in segment "A" of appellants' first point, is supported by clear, cogent and convincing evi-

dence. Consequently, the issue for our determination in segment "B" of appellants' first point is whether the uncontradicted evidence regarding the preparation of the deeds by A___ compelled a finding that A___ was the agent of John alone, or whether the evidence was sufficient to support a finding that A___, with respect to the deed in question, acted as agent for both John and Joe.

We hold that the evidence was sufficient to support the latter finding. Joe was present when John told A___ about the changes he wanted to make regarding ownership of his land. According to Joe's evidence, John's instructions to A___ comported with Joe's understanding of the agreement John had made with him regarding the old home place forty and the schoolhouse forty. The fact that John did the talking does not establish that A___, in drafting the deed in question, acted for John alone. As John's directives to A___ matched Joe's understanding of the agreement he had with John, there was no need for Joe to give A___ the same instructions. The fact that Joe paid A___ for the deed in question is further proof that the instructions John gave A___ were, in effect, mutual instructions of John and Joe. Were that not so, it would have been illogical for Joe to pay A___.

The trial court obviously took that view of the evidence, as manifested by its finding, *supra,* that John and Joe instructed A___ to include the schoolhouse forty in the deed to Joe.

*Dougherty* recognizes that a scrivener can act for both grantor and grantee, and that where he does, and makes a mistake, the mistake is the mutual mistake of the parties. The record before us amply supports such a finding. Segment "B" of appellants' first assignment of error is, accordingly, denied.

Appellants' second, and final, assignment of error avers that the judgment "was against the weight of the evidence," in that the evidence favoring reformation was not clear, cogent and convincing. The argument under this assignment of error focuses on different evidence than segment "A"

of appellants' first point, but the contention is the same: the evidence was insufficient to support the trial court's finding that John intended to convey both the old home place forty and the schoolhouse forty to Joe. Appellants proclaim that John meant for Joe to have only the old home place forty, and that the deed in question gave Joe exactly what John intended.

We rejected that contention earlier, and determined that an opinion setting forth all the evidence on that issue would have no precedential value. Appellants' second point is, consequently, denied, and the judgment is affirmed.

GREENE, P.J., and PREWITT, J., concur.