

# SUPREME COURT OF MISSOURI
## en banc

LILLIAN SINGLETON,              )     *Opinion issued January 31, 2023*
                                         )
            Respondent,     )
                                           )
v.                                         )     No. SC99592
                                           )
SHEILA SINGLETON, ET AL.,     )
                                           )
            Appellants.      )

### APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY
The Honorable H. Mark Preyer, Judge

Sheila Singleton (hereinafter, "Sheila"), Chad Singleton (hereinafter, "Chad"), and Rusty Singleton (hereinafter, "Rusty" and collectively, "Appellants") appeal from the circuit court's judgment reforming a property deed executed by Lillian Singleton (hereinafter, "Lillian") and J.C. Singleton (hereinafter, "J.C."), as husband and wife, that divested Appellants' interest in the property.[1] Appellants raise five points of error challenging the circuit court's judgment, three of which allege the circuit court misapplied the law and two of which allege the judgment was not supported by substantial evidence. This Court holds the circuit court erroneously declared and misapplied the law in reforming

---

[1] The parties will be referred to by their first names because they share the same surname. No disrespect or familiarity is intended.

the deed because it contained a unilateral mistake, which in the absence of fraud, deception, or bad faith, will not be reformed. The circuit court's judgment is reversed, and the case is remanded.[2]

## Factual and Procedural Background

Lillian and J.C. were married and had three children: Dennis, Keith, and Kelly. Dennis married Sheila, and they had two children: Chad and Rusty. Lillian and J.C. owned two tracts of land. One tract was approximately seventy-one acres (hereinafter, "Tract I"), and the other tract was approximately forty acres (hereinafter, "Tract II").

In February 1995, Lillian and J.C. consulted an attorney, Donald Rhodes (hereinafter, "Rhodes"), about leaving the tracts to their children and instructed him to prepare two warranty deeds. Rhodes prepared the deeds, and Lillian and J.C. executed the deeds contemporaneously on February 15, 1995. The deed to Tract I, which is at issue in this case, states in pertinent part: "J.C. … and Lillian …, husband and wife, for their lifetime and at the death of the last to die the remainder to Dennis …, … Keith …, and Kelly …, as tenants-in-common." The deed to Tract II states in pertinent part: "J.C. … and Lillian …, husband and wife, for their lifetime and at the death of the last to die the remainder to Dennis …, for his lifetime and at his death the remainder to Chad … and Rusty …, as joint tenants with rights of survivorship." Rhodes did not know or meet with Dennis, Keith, or Kelly when preparing the deeds. Both deeds were signed and duly recorded in Stoddard County.

---

[2] This Court has jurisdiction. Mo. Const. art. V, sec. 10.

2

J.C. died in 1998. Dennis died in 2014. In 2018, Kelly accompanied Lillian to a consultation with Rhodes to discuss Lillian obtaining a will. During this meeting, Rhodes explained the deeds' operative language. Lillian informed him the Tract I deed was incorrect in that Dennis was not supposed to receive a remainder interest in both tracts. Lillian stated she intended for Dennis to receive a remainder interest only in Tract II, not Tract I, but the deeds as drafted, signed, and recorded left Dennis a remainder interest in both tracts.

Rhodes contacted Appellants and requested they execute a quit claim deed to convey their interests to Lillian, Keith, or Kelly. After receiving no response, Lillian filed suit against Appellants seeking the circuit court to either set aside or reform the Tract I deed to reflect her intent that Dennis not receive a remainder interest in that tract. Lillian's petition alleged Rhodes was instructed to prepare a deed conveying Tract I to Keith and Kelly only but mistakenly included Dennis in the conveyance. Lillian alleged she was unaware of the mistake until 2018. Lillian contended Appellants paid no consideration for the conveyance and Appellants were "totally unaware" the conveyances were made.

A bench trial was held in which only Lillian presented evidence. When Lillian was asked about whether the deeds contained any mistakes, Appellants objected, stating the answer would violate the parol evidence rule and was irrelevant. The circuit court reserved ruling on the objection, permitted Appellants to lodge a continuing objection, and allowed Lillian to testify about how Dennis was not supposed to receive a remainder interest in Tract I because he received a remainder interest in Tract II. The circuit court sustained Appellants' hearsay objections when Lillian attempted to testify about J.C.'s intent by

3

using the word "we" to indicate their wishes for the property distribution. Lillian testified she wanted Dennis removed from the Tract I deed because he would receive several more acres than his siblings. Lillian acknowledged she did not notice the error when signing the deeds.

Rhodes testified on Lillian's behalf and stated he compiled notes when he met with Lillian and J.C. in 1995 about how to prepare the deeds. Appellants objected to the admission of Rhodes' notes as violating the parol evidence rule, constituting hearsay regarding J.C.'s intent, and being irrelevant. The circuit court took the objection with the case and allowed Rhodes to testify about the notes' content. Rhodes read his notes into the record, stating Tract I was to be conveyed to Keith and Kelly and Tract II was to be conveyed to Dennis. Rhodes opined this "seemed like a fair way to divide it, you know, equally among the three children." Rhodes admitted he committed a scrivener's error in drafting the Tract I deed, and the mistake was not discovered until 2018.

Kelly, Keith, and Kelly's daughter, Renee, also testified over Appellants' objections, which were taken with the case. Kelly was asked if Lillian made any representations to her about the deeds. Kelly responded she was told Dennis would receive one tract while the other tract would be split between her and Keith. Kelly testified she spoke with Chad about how the deeds actually were drafted shortly after the 2018 meeting with Rhodes, to which Chad stated, "That's not right." Keith testified J.C. spoke to all of the children either separately or together about his wishes regarding how the tracts would be divided into approximately forty- acre parcels, give or take several acres, for each child.

4

Renee testified she had been told since she was young that Kelly would get the contested property.

The circuit court entered judgment in Lillian's favor ordering the Tract I deed reformed. The circuit court found Lillian's and Rhodes' testimony credible and gave it substantial weight. The circuit court determined the tracts were held by Lillian and J.C. as tenants by the entirety, which allowed Lillian to express their joint intent because neither could have conveyed the property without the signature and approval of the other. The circuit court overruled Appellants' parol evidence objections because the two deeds were prepared contemporaneously and "a rational assumption might be reached that [Lillian and J.C.] intended to give each child approximately 40 acres." The circuit court found Rhodes' testimony created an ambiguity because his notes and recollection demonstrated he incorrectly prepared the deed, even though there was no ambiguity within the four corners of the Tract I deed. The circuit court sustained Appellants' objections to the hearsay testimony regarding J.C.'s intent and expressly disregarded any testimony to this effect when reaching its decision. The circuit court also found no mutual mistake occurred because Rhodes acted solely on behalf of Lillian and J.C. and had no knowledge or contact with Dennis, Keith, or Kelly when preparing the deeds. Finally, the circuit court determined equity permitted the reformation of a gift under these circumstances pursuant to *Kemna v. Graver*, 630 S.W.2d 160 (Mo. App. E.D. 1982).

Appellants filed a motion to amend the judgment, which the circuit court overruled. The circuit court found Rhodes' testimony explaining the purpose of the conveyances as estate planning tools elevated the transaction beyond a "normal" deed. The circuit court

5

clarified Rhodes' testimony did not create the ambiguity itself but was used to explain and provide meaning to the entire transaction. The circuit court considered the two deeds to be one transaction created simultaneously for estate planning purposes, which meant they could not be read in isolation of one another and, when considered together, demonstrated an ambiguity existed. The circuit court expressed its uncertainty as to the difference between a deed of a gift, which could not be reformed, and a voluntary instrument of conveyance, which equity will reform under *Kemna*. However, the circuit court ultimately applied *Kemna* to hold the Tract I deed was a voluntary instrument of conveyance. This appeal follows.

**Standard of Review**

This Court will affirm the circuit court's judgment in a court-tried case "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Empire Dist. Elec. Co. v. Scorse, as Tr. Under Trust Agreement Dated Nov. 17, 1976*, 620 S.W.3d 216, 224 (Mo. banc 2021) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). All evidence and reasonable inferences from the evidence are viewed in the light most favorable to the circuit court's judgment. *Archdekin v. Archdekin*, 562 S.W.3d 298, 304 (Mo. banc 2018). Claims that the circuit court erroneously declared or applied the law are reviewed *de novo*. *Allsberry v. Flynn*, 628 S.W.3d 392, 395 (Mo. banc 2021). Accordingly, "[d]eference is paid to the [circuit] court's factual determinations, but this Court reviews *de novo* both the [circuit] court's legal conclusions and its application of law to the facts." *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 727

6

(Mo. banc 2017) (second and third alteration in original) (quoting *Zweig v. Metro. St. Louis Sewer Dist.*, 412 S.W.3d 223, 231 (Mo. banc 2013)).

## Deed Reformation

Appellants raise five points on appeal. This Court finds Appellants' first point is dispositive. Appellants argue the circuit court erred in entering its judgment reforming the Tract I deed because it erroneously declared and misapplied the law when doing so because it relied on parol evidence when the Tract I deed was unambiguous on its face, the contemporaneous transfer of Tract II cannot—and did not—create an ambiguity, and Rhodes' testimony was incompetent to create an ambiguity. Appellants further argue Missouri law does not permit a court of equity to reform a deed in the face of a unilateral mistake, which is what Appellants contend Lillian committed by granting Dennis a remainder interest in Tract I.

Lillian seeks reformation of the Tract I deed because it does not purport to give effect to her intention to not convey Dennis a remainder interest. Generally, a reviewing court "must ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning." *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 131 (Mo. banc 2007). This Court examines the contract alone to determine the parties' intent unless the contract is ambiguous. *Id*. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty" in the contract's language, which means "it is reasonably open to different constructions." *Id*. (quoting *Seeck v. Geico Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). The plain language of the Tract I deed conveys a remainder interest to Dennis, Keith, and Kelly in property the parties agree is

7

described accurately. There is no duplicity, indistinctness, or uncertainty on the deed's face or in its plain language that reasonably would be open to different constructions. Accordingly, this Court finds the Tract I deed is unambiguous on its face regarding Lillian and J.C.'s intent to convey Dennis a remainder interest in that tract.[3]

"[A]mbiguity is not the only basis for reformation of a written instrument." *Edwards v. Zahner*, 395 S.W.2d 185, 189 (Mo. 1965). An equity court's power "to reform an instrument, which by reason of mistake fails to express the intention of the parties, has long been considered unquestionable." *Walters v. Tucker*, 308 S.W.2d 673, 675 (Mo. 1957). Reformation, however, "is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake." *Ethridge*, 226 S.W.3d at 132 (quoting *Morris v. Brown*, 941 S.W.2d 835, 840 (Mo. App. W.D. 1997)).

---

[3] The circuit court initially ruled Rhodes' testimony—coupled with his notes and contemporaneous preparation of the Tract II deed—created an ambiguity because when examining both deeds under the context of estate planning, "a rational assumption might be reached that [Lillian and J.C.] intended to give each child approximately 40 acres." A court may not assume or surmise a grantor's intent because such "surmises do not meet the full measure of the law, which requires proof to be cogent and convincing." *Dougherty v. Dougherty*, 102 S.W. 1099, 1101 (Mo. 1907); *see also Hood v. Owens*, 293 S.W. 774, 779 (Mo. 1927) (finding an "inference" about the grantor's intent "cannot be indulged" because "clear, cogent, and convincing evidence of mutual mistake is always required in actions for reformation"); *Parker v. Vanhoozer*, 44 S.W. 728, 730 (Mo. 1898) (cautioning reformation should not be based "upon loose, indefinite statements" regarding the grantor's intent). Later, the circuit court clarified Rhodes' testimony did not create the ambiguity itself but was used to explain and provide meaning to the entire transaction. As will be discussed further, this type of evidence, along with examination of the unambiguous Tract II deed, is inadmissible parol evidence except when mutual mistake is alleged. *See Hood*, 293 S.W. at 778 (disregarding parol evidence of a contemporaneously created will that indicated the grantees had "already been provided for" in determining whether an unambiguous deed contained a mistake).

8

None of the parties allege fraud occurred. Instead, Lillian maintains Rhodes' scrivener's error in the Tract I deed did not reflect the parties' intent when mistakenly conveying a remainder interest to Dennis. Missouri law is well-settled that, "when a[n] … agreement of parties was committed to writing, and was complete on its face, it was conclusively presumed that all prior negotiations were merged in the writing, and parol evidence was inadmissible to contradict or vary the terms of the contract or agreement as shown by the writing." *Parker*, 44 S.W. at 729; *see also Robinson v. Korns*, 157 S.W. 790, 794 (Mo. 1913) (recognizing the strong legal presumption a contract that is complete and unambiguous on its face cannot be challenged with parol evidence to vary or contradict the terms). Parol evidence may be admissible, however, to demonstrate reformation of a deed based on mutual mistake. *Morris*, 941 S.W.2d at 840. This Court has long held:

> [F]rom time immemorial courts of chancery have exercised the right to correct written instruments which have been erroneously framed, as where it is admitted or proven that an instrument intended by both parties to be prepared in one form has, by an undesigned insertion or omission, been prepared or executed in another. But while a court of equity will correct a mistake in a written instrument, the evidence that there has been a mistake should be clear and convincing, because in equity as in law the prima facie presumption is indulged that the written contract or instrument exhibits the ultimate intention, and that all previous negotiations and proposals have been abandoned. The burden, therefore, is upon the party asserting the mistake. Moreover, the mistake must be mutual, and both the agreement and the mistake must be made out by satisfactory and clear evidence.

*Parker*, 44 S.W. at 729 (internal citation omitted). *Parker* articulates the standard for reforming an instrument based on mutual mistake. As the party seeking reformation, Lillian bears the burden of proving by clear, cogent, and convincing evidence that the parties had a preexisting agreement regarding the conveyance, there was a mistake, and

9

that mistake was mutual between the grantor and the grantees. *Ethridge v. Perryman*, 363 S.W.2d 696, 698 (Mo. 1963).

Lillian argues a mutual mistake occurred and presented parol evidence of Rhodes' scrivener's error to support her reformation claim. Lillian did not plead, and could not prove, a mutual mistake occurred in this case based upon that error. For, although "[t]here may exist also a mistake of the scrivener of the instrument who does not incorporate therein the true prior intention of the parties which will entitle[] either to the remedy in equity of reformation of the instrument," *Edwards*, 395 S.W.2d at 189, Missouri courts have long held that, for the scrivener's mistake to constitute proof of a mutual mistake to warrant reformation, the scrivener must stand as an agent and act at the direction of both parties. *Brocking v. Straat*, 17 Mo. App. 296, 305 (1885); *Dougherty*, 102 S.W. at 1101-02; *Bartlett v. White*, 272 S.W. 944, 956 (Mo. 1925); *McCormick v. Edwards*, 174 S.W.2d 826, 828 (Mo. 1943); *Cox v. Cox*, 725 S.W.2d 880, 884 (Mo. App. S.D. 1987). In this case, the clear, cogent, and convincing evidence demonstrated Lillian and J.C. alone went to Rhodes' office to procure the deeds, Rhodes acted on behalf of and at their sole direction when drafting the deeds, and Rhodes testified he did not meet with or consult Dennis, Keith, or Kelly during the process. The record further reflects Lillian conceded this fact when she pleaded Appellants were "totally unaware" of the Tract I deed at the time it was drafted and conveyed. Accordingly, no mutual mistake occurred here.

When the scrivener acts at the direction of one party and in the absence of the other party when committing a scrivener's error, the resulting mistake "is purely unilateral ...." *Dougherty*, 102 S.W. at 1102 (finding a unilateral mistake occurred when the scrivener

10

acted on behalf of the grantees only when committing the error); *Hood*, 293 S.W. at 779 (finding a unilateral mistake occurred when the scrivener acted on behalf of the grantor only when making the mistake). Reformation of an instrument based on a unilateral mistake may occur when the "mistake is accompanied by clear and convincing evidence of some sort of fraud, deception or other bad faith activities by the other party that prevented or hindered the mistaken party in the timely discovery of the mistake." *Alea London Ltd. v. Bono-Soltysiak Enter.*, 186 S.W.3d 403, 416 (Mo. App. E.D. 2006) (quoting 27 *Williston on Contracts* §70:104, at 520 (4th ed.)). It is well-settled that a unilateral "[m]istake on one side, without fraud of some kind on the other side including the mistake will not be sufficient to relieve the party making the mistake" and is a mistake equity will not reform. *Dougherty*, 102 S.W. at 1102. The record fails to reveal any fraud, deception, or other bad faith on Appellants' part that prevented or hindered Lillian from discovering her mistake in the Tract I deed that would support reformation based on a unilateral mistake.[4]

Alternatively, Lillian urges this Court to apply *Kemna* to support her position that equity will reform a unilateral mistake in a voluntary instrument in the absence of fraud, deception, or bad faith. In *Kemna*, a brother sought reformation of a voluntary conveyance

---

[4] Lillian argues Appellants' refusal to execute a quit claim deed to divest their interests upon her discovery of the mistake in 2018 constitutes bad faith. Yet, bad faith to support reformation based on a unilateral mistake refers to bad faith activities that prevented or hindered Lillian from discovering the mistake. The record is devoid of any evidence Appellants engaged in any such activity. To the contrary, Lillian's petition averred Dennis, Keith, and Kelly were "totally unaware" of the transaction when it occurred, so they could not have hindered or prevented her from discovering the mistake.

11

he made to his sister after discovering a mistake in the deed. *Kemna*, 630 S.W.2d at 160-61. The circuit court denied reformation, finding the brother's failure to discover the legal significance of the deed language constituted gross negligence. *Id*. at 161. The Eastern District reversed the circuit court's judgment, holding "neglect does not rise to negligence which may bar reformation of an instrument unless the act of neglect violates a positive legal duty owed" to the sister by her brother. *Id*. The Eastern District admitted it knew "of no authority for imposing on [the brother], as the donor in a voluntary conveyance, a positive legal duty to [the sister] donee to ascertain the legal significance of language in a deed of gift." *Id*. Accordingly, the Eastern District held the circuit court erred in holding reformation was barred by the brother's gross negligence. *Id*. Despite having addressed and resolved the specific error in the circuit court's judgment, the Eastern District continued, "It is a well-settled general rule that equity will reform a voluntary instrument of conveyance at the suit of the donor when the instrument does not express the donor's intent in making the gift." *Id*.

While *Kemna* is an outlier among equitable reformation cases in Missouri, several other jurisdictions have adopted the rule cited in *Kemna* to hold equity will reform a voluntary instrument upon a donor's suit when the instrument does not express the donor's intent in making the gift. *See, e.g., Pullum v. Pullum*, 58 So.3d 752, 757-60 (Ala. 2010) (holding "when a grantor seeks to reform a deed based on a unilateral mistake and that deed was voluntary, equity will act to reform the deed" and collecting cases from other jurisdictions to support its holding). This rationale reflects Restatement (Third) of Property: Wills and Other Donative Transfers §12.1 (2003), which recognized,

12

A donative document, though unambiguous, may be reformed to conform the text to the donor's intention if it is established by clear and convincing evidence (1) that a mistake of fact or law, whether in expression or inducement, affected specific terms of the document; and (2) what the donor's intention was.

Even if this Court were to adopt the holding in *Kemna*, it would not aid Lillian because *Kemna* is distinguishable. The *Kemna* grantor was available at trial to express his intent and mistake when seeking reformation. Here, only Lillian was available to express her mistake in including Dennis in the Tract I deed. J.C. is no longer available to speak about his intent or any mistake, and the circuit court expressly disregarded any hearsay or parol evidence Lillian attempted to offer regarding J.C.'s intent. As such, J.C.'s intent cannot be ascertained to warrant reformation of the Tract I deed.[5]

Lillian argues, and the circuit court agreed, the parties' status as tenants by the entirety uniquely situated Lillian to express both her and J.C.'s intent because neither could convey Tract I without the other's signature and approval. Lillian is correct that "[a] deed by only one of two tenants by the entirety conveys nothing." *Ethridge*, 226 S.W.3d at 132. Assuming without deciding Lillian and J.C. owned Tract I as tenants by the entirety, Lillian provides no caselaw in which a surviving spouse may offer parol evidence of the deceased spouse's intent or mistake regarding a conveyance. Instead, Lillian cites *Kroner Investment's LLC v. Dann*, 583 S.W.3d 126 (Mo. App. E.D. 2019), for the

---

[5] Further, this Court finds *Phillips v. Cope*, 111 S.W.2d 81 (Mo. 1937), upon which *Kemna* relies, is also distinguishable even when assuming the mistake in that case was unilateral instead of mutual because the *Phillips* deed, as written, was untenable under its express terms.

13

proposition that a mistake of one tenant by the entirety may be imputed to the other. Lillian's reliance on *Kroner* is misplaced. *Kroner* involved a quiet title action in which the husband solely conveyed a deed of trust on property owned jointly by him and his wife to satisfy a child support obligation, then later he and his wife jointly sold the property to a third party. *Kroner*, 583 S.W.3d at 128. *Kroner* held the husband could not convey the deed of trust solely, rendering the deed of trust invalid as a matter of law. *Id*. at 130. Hence, *Kroner* does not stand for the proposition one spouse's mistake may be imputed to another and does not support Lillian's position. The circuit court expressly disregarded all evidence regarding J.C.'s alleged mistake. This Court may not surmise or infer J.C.'s intent constituted anything other than the intent plainly and unambiguously expressed in the Tract I deed to provide Dennis a remainder interest.

Lillian failed to demonstrate her unilateral mistake was accompanied by clear, cogent, and convincing evidence of the grantors' intent or fraud, deception, or other bad faith by Appellants that prevented or hindered her from timely discovering her mistake. The circuit court misapplied long-standing Missouri law when it ordered the Tract I deed be reformed to divest Appellants of their remainder interest under these circumstances.

## Conclusion

The circuit court's judgment is reversed, and the case is remanded.

_____
GEORGE W. DRAPER III, Judge

All concur.

14